# CHARLESTON.

BURDETTE v. COLUMBUS MUTUAL LIFE INSURANCE CO.

Submitted April 17, 1917.   Decided May 1, 1917.

1. INSURANCE—*Beneficiary—Insurable Interest.*

    Any person competent to contract may in good faith lawfully procure insurance upon his life, and in the policy designate as beneficiary any one whom he may choose, though not related to him by blood or marriage. Insurance so procured is not invalid, or subject to condemnation as being obnoxious to public policy. (p. 387).

2. SAME—*Insurable Interest—Beneficiary—Foster Mother.*

    A foster daughter, when acting in good faith, lawfully may procure insurance upon her life, payable to her if living at the expiration of the term fixed by the contract, and in the policy designate as beneficiary in the event the insured should die within the term the foster mother, who had assumed toward the insured a moral obligation to maintain and support her as a member of the family composed solely of the beneficiary and her husband, they being childless. (p. 387).

3. SAME—*Life Insurance—Beneficiary—Wagering Contract.*

    Though valid on its face, such a contract of insurance ceases to be enforcible, because obnoxious to public policy, whenever in an action thereon by the beneficiary it appears from the proof intro-

duced upon the trial, competent and sufficient to satisfy the minds of reasonable men, that the policy partakes of the nature of a wagering contract upon the continuance of the life insured, and as such tends to induce a temptation on the part·of the beneficiary, by unfair means, to terminate such life rather than to prolong it. (p. 390).

4.  SAME—*Life Insurance—Wagering Contract—Question for Jury.*
    Whether the insurance was obtained in good faith or for speculative purposes merely, either by the insured or beneficiary, depends upon the facts and circumstances surrounding the parties at the time of its procurement; of the sufficiency of which, and of the inferences to be drawn from them, to show the true character of the transaction, the jury, not the court, must determine. (p. 392).

Error to Circuit Court, Cabell County.

Action by Susan Burdette against the Columbus Mutual Life Insurance Company. Judgment for defendant, and plaintiff brings error.

*Reversed, verdict set aside, new trial granted.*

*J. W. Perry* and *Marcum & Shepherd,* for plaintiff in error.

*J. M. Sheets* and *Enslow, Fitzpatrick & Baker,* for defendant in error.

LYNCH, PRESIDENT:

Of the two questions discussed, one only need be determined upon this review; that one being whether plaintiff on June 30, 1913, had an interest in the life insured sufficient to permit her as beneficiary to maintain this action on the policy issued by the Columbus Life Insurance Company. Upon the trial the court, apparently adopting the view that she had no such interest, on defendant's motion excluded the testimony introduced by her and entered the *nil capiat* judgment of which she complains.

No relationship by consanguinity or affinity existed between Susan Burdette, the beneficiary, and Sadie Sarah Thompson, the insured. Until the early spring of 1913 they were strangers, unrelated in any manner, and personally unacquainted with each other. The plaintiff, a childless

married woman, living with her husband, accepted and introduced the insured, who then was seventeen years of age, into her household as a member of the family, theretofore composed of herself and husband. Until the date of her death, which occurred January 1, 1915, the insured remained a member of that household. Between her and the foster mother there arose an intimacy, sympathy and friendship, which continued without interruption, except for a brief period of a few days, until terminated by the death of the girl; and the uncontradicted and unimpeached testimony shows beyond question not only that the two voluntarily assumed towards each other the performance of the reciprocal duties incident to the relation of foster mother and foster daughter, a relation which, though materially different from that maternal and filial reciprocity due to actual motherhood, is akin to it, but also that Mrs. Burdette had signified an intention to adopt the child as her daughter, under the authority of chapter 122, Code, and employed an attorney to prepare the papers necessary to institute the proceedings thereby required to effectuate that purpose, and, as one of the incidents of such adoption, to confer upon the girl the right of prospective inheritance from the foster parents. Plainly, this purpose, if it existed, and we must assume it did in the absence of proof to the contrary, was defeated by the illness and death of the insured. Moreover, as supplementary thereof, Mrs. Burdett, while the child was living, actually had in contemplation the making of a will devising and bequeathing to the insured jointly with the husband of the plaintiff, in the event they survived the testator, the property of which she should die seized and possessed.

The death of the insured was caused by pneumonia fever, induced by her voluntary and indiscreet exposure in going to and returning from her bedroom and the toilet in the night-time when insufficiently protected by clothing, while in the process of recovery from an operation by her medical adviser deemed necessary in order to remove the appendix, which he seemed to think was the provoking cause of the feverish condition that tended to retard her recovery from a chill suffered as the result of bathing in the waters of the

river during the period of menstruation. The operation did disclose an abnormal enlargement of the appendix, and at the same time an unhealthy condition of the ovaries, the bath being assigned as the proximate cause of the infection. From these afflictions and from the operation itself she had not fully recovered when the fever set in, but for which she may have regained her former aparent healthfulness, as seems to have been the belief of her medical adviser.

An examination of the proof introduced upon the trial fails to disclose any substantial reason for assuming that underlying the act or purpose of the parties there were any improper motives or *mala fides* on the part of the insured or beneficiary in procuring the contract. Nor is there anything pointed out as the basis of a suspicion of the want of good faith in the transaction, further than that the plaintiff through Dr. Schultz first directed the attention of the defendant's agent Payne to the fact that the insured desired to procure the policy. It is apparent, indeed obvious because not controverted, that the child herself first expressed a desire for the insurance, and that plaintiff's participation in effectuating that desire for the endowment policy issued was prompted by the protection it would afford to the child, the care of whom she had assumed, and who of her own accord caused the agent to name the plaintiff as the beneficiary in the event the former should die within the twenty year period fixed by the contract as the time of its maturity. If she survived that period, as her life expectancy seemed to indicate she would, the money then due on the policy would be payable to the insured herself. The only other fact relied on as indicative of a sinister motive in applying for the insurance is that Mrs. Burdette paid the first premium on the policy.

Evidently, the action of the trial court was based upon the proposition, sustained and supported by much authority, that, except where there is some relation by blood or affinity between the insured and the beneficiary, as in the case of husband and wife or parent and child, or some pecuniary interest to be conserved, as debtor or creditor, or in case of dependency, a beneficiary not so interested can not maintain

an action on a life insurance policy, because forbidden by public policy. Such a contract, it is said, partakes of the nature of a wager upon the existence of the life insured, and as such tends to induce the temptation on the part of the beneficiary to terminate rather than to prolong it. This, indeed, seems to have been the view taken and rigidly adhered to in the earlier cases. But the modern tendency is to relax that doctrine, and to enforce the contract by permitting recovery, provided always fraud or other improper motives does not enter into its procurement. If free from suspicion that it was obtained for speculative purposes, the policy does not violate the rule against wagering contracts. Nor does it necessarily presuppose a desire by foul means to terminate the life insured in order to facilitate the enjoyment of the amount of the insurance.

It must be observed that the plaintiff made no effort to procure, and did not procure, a contract of insurance in her own name upon the life of the decedent, as was done in many of the decided cases which have held such contracts unenforcible because of the tendency to speculate upon the prolongation of the life of a particular person. The insured did what the court in *Langdon* v. *Insurance Co.,* 14 Fed. 272, upheld as not violative of any rule of law. It was there said, what is peculiarly pertinent here: ''It is now well settled in the federal courts that a party can not take out an insurance policy on his own life and assign it, either contemporaneously or subsequently, to a person having no legal interest in his life; but no case holds that a party may not insure his own life and make the policy payable to any one he may select, though such person have no legal interest in his life''. The same rule was laid down in *Le Monte* v. *Grand Lodge,* 31 Fed. 177, Justice Shiras presiding upon the circuit. He said in the opinion: ''Public policy requires that a person having no interest in the life of another shall not be permitted to speculate on such life and thereby become interested in its early termination; but public policy does not forbid a person from in good faith making provision for the future of another in whom he may be interested, even though the latter may not have an insurable interest in his

life". To the same effect are the decisions of the supreme court of Pennsylvania. *Downey* v. *Hoffer,* 110 Pa. 109; *Scott* v. *Dixon,* 108 Pa. 6. In the Downey case that court said: "A man may insure his own life and direct that the insurance may be paid to anybody he pleases, whether that person has any interest in his life or not, the insured paying the premiums. There is nothing speculative either in the origin or continuance of such a contract, as long as the insured keeps it within his own control and pays the premiums himself. But it is a different case when he assigns the policy out and out to another having no insurable interest". *Hess* v. *Segenfelter,* 127 Ky. 348, is authority for the rather liberal statement that "all the courts of last resort·with possibly one exception, and the text writers on insurance generally, are agreed that a person may take out insurance upon his own life and designate whom he pleases as the beneficiary". Because apt and expressive, we quote somewhat at length from the opinion of the supreme court of Georgia in *Union Fraternal League* v. *Walton,* 109 Ga. 1: "Beyond all controversy a man has an insurable interest in his own life; and we fail to see when, having that interest, he enters into a contract with an insurer by which for a stipulated sum which he periodically pays the insurer becomes liable to pay a given sum of money at the death of the insured, why he who is most interested, whether actuated by ties of relationship, motives of friendship, gratitude, sympathy or love, may not make the object of his consideration the recipient of his own bounty. If it be replied that a temptation is extended to the beneficiary, by improper means, to hasten the time when he should receive the amount of the policy—and it is for this reason that such contracts will only be upheld when the idea · of temptation is rebutted by natural ties of blood or affinity —we might well ask ourselves why executory devises, bequests, or provisions for support and maintenance, provided for friends and even strangers, are not subject to the same inhibition as being against public policy".

An authority pertinent and competent, because it deals with a status between the insured and beneficiary similar to that appearing in the case under review, is *Thomas* v. *Na-*

*tional Benefit Association,* 86 Atl. 375. The plaintiff had taken into her family an inmate of an orphan asylum, and from defendant procured a policy of insurance payable directly to her upon the life of the child, a girl seventeen years old, between whom and herself there was no relation either by blood or affinity. The defendant, to defeat recovery in an action upon the policy after the death of the child, pleaded, and undertook to show, the want of insurable interest in the life insured. The court held: "A woman who takes a girl from an orphan asylum and gives her a home, under circumstances calculated to raise reasonable expectation of help and care from her during the declining years of the benefactress, has an insurable interest in her life, although she is not formally appointed her guardian". And in the opinion it is said: "If the insured is under a moral obligation to render care and assistance to the beneficiary in the time of the latter's need, then the latter has an insurable interest other than a mere pecuniary one in the life of the former". In *O'Ritz* v. *Carroll,* 118 Wis. 527, and *Chisholm* v. *Insurance Co.,* 52 Mo. 213, it is held that a woman has an insurable interest in the life of a man whom she has agreed to marry. *Cronin* v. *Insurance Co.,* 20 R. I. 570, defines an insurable interest as one which may arise out of such relations between the insured and the beneficiary as show a common interest and rebut the presumption of a mere wager, or where there is a moral obligation sufficient to form the basis of a reasonable expectation of advantage or benefit from the continuance of the life insured. See also *Warnock* v. *Davis,* 104 U. S. 775. Much additional authority sustains the same principle.

The only limitation the cases place upon its application is that so long as the insured exercises good faith and acts without fraud he may enter into a contract from which may accrue to another an interest to be effectuated by his demise, without the contract being subject to rejection as invalid because contrary to public policy; and courts decline to declare the contract void for that reason, except upon circumstances which clearly evince such a speculative purpose as might induce the beneficiary to terminate the life insured.

For cases supporting this doctrine, see *Insurance Co.* v. *Greenlee*, 84 N. E. 1101; *Ashford* v. *Insurance Co.*, 80 Mo. App. 638; *Crosswell* v. *Indemnity Assoc.*, 51 S. C. 103; *Insurance Co.* v. *Hamilton*, 63 Fed. 93; *Foster* v. *Insurance Co.*, 125 Fed. 536; *Dolan* v. *Benefit Association*, 152 Mich. 266; Cooley, Ins. 761; 11 Am. & Eng. Enc. Law 318; May, Ins. §535; notes 15 Ann. Cas. 235, 128 Am. St. 304. In such case the interest of the insured in the continuance of his own life supports the policy and saves it from condemnation as one inconsistent with sound public policy.

Although there is, it is true, lack of harmony among the authorities upon the question of good faith, where one procures another in whose life he has no insurable interest to take out a policy on his own life for the benefit of the party who procures it, and who obligates himself to pay the premiums as they mature, some of them sanction the theory that such a policy is void and unenforcible. But there are cases which take the contrary view and hold that although the beneficiary may obtain the policy on the life of another and pay the premium the contract is not thereby necessarily void. *Valton* v. *Loan Society*, 22 Barb. 9; *Insurance Co.* v. *Leyden*, 47 S. W. 767; *McCann* v. *Insurance Co.*, 177 Mass. 280; *Albert* v. *Insurance Co.*, 122 N. C. 92. The inducement for a transaction of this character must not be to secure a mere speculative contract, or a mere scheme to promote speculation. If that be the motive or purpose, the transaction will fall within the condemnation of the rule against wagering contracts. *Davis* v. *Brown*, 159 Ind. 644. But the application of this doctrine ordinarily, though not always, is to policies procured by a person in his own name on the life of another in which he has no insurable interest. Such policies are held to be unenforcible, on the presumption that the persons who procure them may be tempted unduly to terminate the life which stands between them and the beneficial enjoyment of the insurance money.

The question is not any more so much whether the beneficiary had an insurable interest in the life of a person who procures the policy as it is a question of the good faith and motives behind the procurement. Freeman in his notes to

*Howe* v. *Griffin,* 128 Am. St. 304, says, what is applicable here in two aspects: "Although a person may procure insurance on his own life and make one having no insurable interest the beneficiary, still where the insured in procuring the policy does not act in good faith for himself and as a matter of fact merely procures the insurance because of some understanding or agreement with the person who has prevailed upon him to obtain it, and who agrees to pay the premiums and other expenses connected with the matter, the insurance will be deemed as having been procured by the beneficiary and not by the insured. Hence the policy will be declared void as a wagering contract where the beneficiary has no insurable interest." As sustaining this view he cites many cases. In the Valton case, *supra,* the good faith of the transaction was submitted to the jury, and on its verdict the court entered a *nil capiat* judgment.

To sustain recovery, no rule of law required plaintiff to show, by proof in chief, that at the date of the policy she had an insurable interest in the life of Sadie Sarah Thompson. Until rebutted by proof sufficient to satisfy the jury of the *mala fides* of the transaction, the policy itself was competent evidence of such good faith as will validate the contract. *Insurance Co.* v. *Greenlee, supra.* On defendant devolved the duty and burden of showing such facts and circumstances, among them being the payment by plaintiff of the initial premium and her assumption of other payments as each of them became due, as would tend to establish in the minds of reasonable men the conviction that the insurance was effected by her for speculative purposes. But, as pointed out already, and as supported by the authorities cited, the mere payment or the assumption of the payment of the premiums is not of itself sufficient to establish the speculative character of the contract. It is a mere circumstance, to be weighed by the jury in passing upon the *bona fides* of the contract. But whether it was obtained by the insured of her own volition, or by reason of undue solicitation of the beneficiary and primarily or ultimately for her own enrichment, and thereby to endanger the girl's life, present questions of

fact for jury determination, if the testimony as to these questions be conflicting.

The reasons assigned render obvious the error committed in ruling upon defendant's motion to exclude the testimony, and the necessity of reversing that action and granting plaintiff a new trial; and our order will so direct.

*Reversed, verdict set aside, new trial granted.*