# VOLUNTEER STATE LIFE INSURANCE COMPANY v. PIONEER BANK, Trustee, et al.—327 S. W. (2d) 59.

Eastern Section. May 6, 1959.

Certiorari Denied by Supreme Court July 27, 1959.

Noone & Noone and William P. Hutcheson, Chattanooga, for appellant.

Hugh J. Morgan, Jr., Chattanooga, guardian ad litem for Joseph Patrick Steiner.

Miller, Martin, Hitching & Tipton, Chattanooga, for appellees.

HOWARD, J. This is a suit for declaratory judgment to determine whether an insurance policy taken out on the life of a six month old infant is valid. After the case reached this Court, the infant died, and his death having been suggested, an order reviving the suit against his heirs at law has been entered.

After reviewing the record, we find that the issues are clearly stated in the Chancellor's memorandum opinion, as follows:

"This suit was filed by The Volunteer State Life Insurance Company for a declaratory judgment by the court on whether the defendants Edward Francis Steiner, Jr., Pioneer Bank, Trustee, and The National Hemophilia Society of New York, or any of them, now have or ever have had any insurable interest in the life of a child placed with the defendant Steiner by the Family Service Agency of this city tentatively for adoption. The bill also seeks a decree of cancellation of the policy of $5,000.00 which had been issued by the complainant to the defendant Steiner on his application dated April 3, 1957, for this policy of life insurance.

"This case was tried on the original bill, the answers of the defendants and written stipulations of fact.

"The policy which the defendant Steiner obtained from the complainant was on the life of this infant child, who had been born on October 1, 1956, and the policy was first made payable to the defendant Steiner. At the time appli-

cation was made for this policy of life insurance and when it was issued, the defendant Steiner had only tentative or provisional custody of the child under the provisions of a written contract with the Family Service Agency of Chattanooga, a licensed child-placing agency. Defendant Steiner and his wife, among other things in this contract, agreed that while the child was in 'our custody,' they would treat him as their own child and that they would not, without the written consent of the Agency, 'delegate or transfer his care and custody to any other person.' The contract further provided that Steiner and his wife would not 'commence court proceedings for his adoption without the consent of the agency,' and that they agreed that 'the consent of the agency may be withheld if, in the opinion of the agency, the best interest of the child will be benefited thereby.' This contract further provided that the Steiners as prospective adoptive parents 'may return this child to the agency at any time prior to adoption' if they so desired. Another provision of the contract was that 'the agency has the right to remove the child from our home at any time prior to adoption' if the Agency considered this action desirable.

"The facts concerning the placement of the child tentatively for adoption with the defendant Steiner are set forth in Paragraph 4 of the stipulation filed June 2, 1958, as follows:

" 'The minor defendant known as Joseph Patrick Steiner was born on October 1, 1956. Shortly after his birth, he was turned over to Family Service Agency of Chattanooga, a child placing agency under the laws of Tennessee. Family Service Agency tentatively placed said child in the custody of defendant Edward Francis Steiner, Jr., under a written agreement setting out the

nature, terms and conditions of such custody, a copy of said written agreement, (with date, names and signatures omitted) being attached as Exhibit A to the answer of defendant Pioneer Bank, Trustee. At the time when said child was so placed in the custody of Edward Francis Steiner, Jr., he considered adopting the child if Family Service Agency would consent. But no adoption proceedings were ever instituted in any court, and it is not now expected that any such adoption proceedings for the adoption of the child by Edward Francis Steiner, Jr., will be commenced hereafter. Mr. Steiner's custody of the child was only tentative and conditional. He was at liberty to return the child to Family Service Agency at any time, and Family Service Agency could require him to return the child at any time.'

\* \* \* \* \* \*

"After the issuance of the policy of life insurance, this infant child suffered a minor injury which confirmed the fear that the child was a victim of hemophilia. Under the provisions of his contract with the Family Service Agency, Mr. Steiner then turned the child back without ever having even filed a petition for adoption. Thereafter, on or about December 24, 1957, Mr. Steiner executed a trust agreement purporting to transfer the policy to the Pioneer Bank as Trustee. It provided that if the child lived to attain the age of 21, and if the policy was kept in force until then, the policy would be given to him. If he died before attaining the age of 21, neither the child nor his estate would receive any benefit since the entire $5,000.00 policy proceeds would be applied first toward reimbursing the Family Service Agency for any premiums paid by it with the balance being paid to the National Hemophilia Society. The Family Service

Agency, however, refused to pay any premiums and the policy has been kept in force by premium payments being made by Mr. Steiner. The result is that the National Hemophilia Society would be entitled to the entire $5,-000.00 proceeds if this child died while the policy was in force and before attaining the age of 21. * * * This policy is non-participating and does not pay any dividends. It has no cash value or loan value during its first six years and its value at the end of the seventh year is only $2.96 for each one thousand dollars of insurance.''

And basing his conclusions on the foregoing facts, the Chancellor held:

''This policy of life insurance was taken out on the life of this infant without his knowledge or consent and because of his tender years, he lacks the mental or legal capacity to consent.

\* \* \* \* \* \*

''This court is of the opinion, and so holds, that none of the defendants at any time had any insurable interest in the life of this infant, that the policy issued in this case is void on the ground of public policy, and that the same should be cancelled since it is highly improbable that any benefit thereunder can result to the infant.

''This court finds that the defendant Edward Francis Steiner, Jr., was not guilty of any intentional fraud or wrongdoing and that, consequently, he is entitled to be refunded all premiums which he has paid to the complainant together with interest thereon.

\* \* \* \* \* \*

"Court costs in this case, including a reasonable fee for the Guardian ad Litem, will be taxed against the complainant."

From a decree canceling the policy, the defendant Pioneer Bank, Trustee, has perfected a broad appeal to this Court where, by proper assignments of error, it is contended that the Chancellor erred in holding that the policy is void because: (1) The infant being of tender years was unable to give his consent thereto; (2) none of the parties at any time ever had an insurable interest in the life of the infant; (3) on grounds of public policy, and (4) of the improbability of any benefit ever resulting to the infant.

It being a broad appeal, the complainant has likewise assigned errors complaining because the Chancellor (1) taxed complainant with the costs, (2) held that Steiner acted in good faith, (3) allowed interest on the premiums to be refunded, and (4) refused to rule upon objections to evidence.

The record shows that complainant had notice that the infant might be afflicted with the disease of hemophilia before the policy was issued; that on June 3, 1957, the agent who took the application wrote the Chief Underwriter as follows:

"Enclosed is the application on Joseph Patrick Steiner that I called you about this morning.

"This child is the second adopted child of these folks, adopted through the Family Service Agency here in Chattanooga. At the time of adoption, they were told that it was possible that this child would have Hemophilia. This seemed possible because the

child's older half-brother, (They have a common mother) has hemophilia.

"The child does seem to bruise easily, although no evidence of hemophilia was noticed at the time of circumcision. Dr. Lavecchia has the entire history, including the family history, in his files.

"I hope you will be able to do something for these folks."

■ Notwithstanding previous decisions by the appellate courts of this state that a policy of insurance taken out on the life of another, without the latter's consent, is void as against public policy, Branson v. National Life & Acc. Ins. Co., 4 Tenn. App. 576; Interstate Life & Acc. Ins. Co. v. Cook, 19 Tenn. App. 290, 86 S. W. (2d) 887, the complainant tacitly concedes that it is now the prevailing rule in most states, including Tennessee, that parents may insure the lives of their infants who are unable to give their consent, though we have been unable to find in our reports a decision to this effect. Obviously the latter rule has been generally approved, because the Courts were compelled either to deny the possibility of insuring infants at all, or in the alternative permitting them to be insured under certain conditions, without their consent, as where the person procuring the policy has a recognized insurable interest, other than a pecuniary interest in the life of the infant, and is a parent or, as in the instant case, stands in loco parentis to the infant. 29 Am. Jur., Sec. 371, p. 323; 44 C. J. S. Insurance sec. 207, p. 909. See also Annotation, 25 A. L. R. 1548, 1549 et seq.

In C. J. S., supra, the rule is stated as follows:

"One has an insurable interest in the life of a person to whom he stands in loco parentis, and conversely the person occupying the filial relationship has an insurable interest in the life of the pseudo parent.

"A person who has out of friendship and without any bond of kinship assumed the position of father to another has been held to have an insurable interest in the life of the other."

In Thomas v. National Benefit Association, 84 N. J. L. 281, 86 A. 375, 46 L. R. A., N. S., 779, Ann. Cas. 1914 D, 1123, the beneficiary in a life insurance policy took the insured when she was 17 years old from an orphanage and gave her a home and supported her until she became able to maintain herself; that upon her death the beneficiary took charge of the funeral and paid the expenses and, though not related to the insured, it was held that the beneficiary had an insurable interest in the life of the insured.

In Burdette v. Columbus Mutual Life Ins. Co., 80 W. Va. 384, 93 S. E. 366, the beneficiary, a childless married woman living with her husband, took into her household a 17 year old girl where she remained for about 2 years before her death; that the girl had expressed her desire for the insurance, which was paid for by the beneficiary, who in the meantime had signified her intention to adopt the girl; that under these circumstances the appellate court reversed the trial judge who held that the beneficiary had no insurable interest entitling her to maintain suit on the policy, and remanded the case for a new trial.

In Carpenter v. United States Life Ins. Co., 161 Pa. 9, 28 A. 943, 23 L. R. A. 571, it was held that the assumption of parental relations, although without any legal obligation, by a man who sent a girl to school and paid her expenses, was sufficient to give her an insurable interest in his life, so as to sustain a policy which he procured and assigned to her, the Court saying:

"Without any legal obligation other than friend, he chose to assume all the burdens incident to this domestic relation of parent and child. His conduct and promises for years warranted her in believing the relation would continue while his life lasted. * * * Here the plaintiff had nothing whatever to do with the procurement of the policy, or its assignment; paid no part of the premium, and, so far as appears, never expected to pay any, for she was ignorant of its existence during the lifetime of the insured. She had substantial grounds for expecting decided pecuniary advantage from his life. Why, then, should the contract be termed speculative? Her expectancy, except in the one feature,—the absence of legal obligation to enforce it,—was as well founded as that of a wife or creditor. If a voluntary co-partnership gives to each partner an insurable interest in the lives of the others; if the relation of superintendent or manager of a business concern gives to his employers an insurable interest in the life of the superintendent or manager, as is well settled,—then the voluntary relation here gave to this plaintiff an insurable interest in the life of one who, in all pecuniary respects, occupied towards her the place of a parent, and the court below ought not to have held otherwise."

In Merriam v. National Life & Accident Ins. Co., 169 Tenn. 291, 86 S. W. (2d) 566, 568, insured procured a policy on his life for which he paid the premiums, and it was held that the rights of the intended beneficiary could not be defeated under noninsurable interest rule, where beneficiary's bill alleged that insured, after having been abandoned by his family, lived in beneficiary's home as member of family for six years next preceding insured's death, the Court saying:

"The bill as amended shows the existence of a relationship, although not by blood, which would justify rejection of the application of the non-insurable interest rule, in that it is made to appear that the deceased, Robert E. Knight, after having been abandoned by his family, during his minority, was taken into the home of the beneficiary named by him in this policy and treated as a member of his family, over a period of some six years, so residing until the day of his death; *that the complainant beneficiary named in the application 'occupied the place of loco parentis, or foster father, to the deceased.' We are aware of no case denying recovery upon a policy of life insurance where such an association of family interdependence, although voluntarily assumed, existed.*" (Emphasis supplied.)

In Baird v. Fidelity-Phenix Fire Ins. Co., 178 Tenn. 653, 162 S. W. (2d) 384, 140 A. L. R. 1226, the Court held that anyone who has made himself responsible for property may insure it against loss.

In 29 Am. Jur., it says:

"While all the authorities are agreed that an insurable interest of some sort must exist in the case

of life insurance, the authorities are not exactly agreed on the question of what constitutes the requisite interest. There are cases which hold that the interest must be a pecuniary one and that near relationship is not per se enough. The weight of authority, however, is to a different effect. The general rule supported in substance by most of the cases is that any reasonable expectation of benefit or advantage from the continued life of another creates an insurable interest in such life; the advantage or benefit need not be capable of pecuniary estimation, but an insurable interest may be predicated upon any relation which is such as warrants the conclusion that the person claiming an insurable interest has an interest, whether pecuniary or arising from dependence or natural affection, in the life of the person insured. * * *

"In all cases, however, there must be a reasonable ground, founded on the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the insured. Otherwise, the contract is a mere wager by which the party taking the policy is directly interested in the early death of the insured. * * *The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating on the hazard of a life in which the insured has no interest.* The existence of an insurable interest in the final analysis, therefore, depends upon the inherent nature of the financial, beneficial, or personal relationship that exists between the parties involved, and is not dependent upon who pays the premiums or upon the

consent of the insured." Sec. 353, pp. 309, 310, 311. (Emphasis supplied.)

In line with the foregoing authorities, we are constrained to hold that the original beneficiary stood in loco parentis to the infant at the time the policy was issued, for the following reasons: Prior to taking the child from the Welfare Agency, the Steiners signed an agreement "that while this child is in our custody, we will treat him in all respects as if he were our own child, will give him the care and attention of a parent, and the full advantage of educational and religious facilities of our community. * * * *We will give this child a free home, assuming complete responsibility for his care and maintenance* with the intention of adopting him if we find him * * * to be a child whom we want to make permanently ours." (Emphasis supplied.) And standing in loco parentis, it follows that the original beneficiary had an insurable interest in the child, said interest, under our decisions, being fixed at the inception of the policy. Marquet v. Aetna Life Ins. Co., 128 Tenn. 213, 159 S. W. 733, L. R. A. 1915B, 749; Wurzburg v. New York Life Ins. Co., 140 Tenn. 59, 203 S. W. 332, L. R. A. 1918E, 566; 29 Am. Jur., Sec. 354, p. 311.

Nor do we find any indication whatsoever that the original beneficiary procured the policy in bad faith, or that it was procured for speculative or wagering purposes which, if proved, would invalidate the policy.

And while the policy contains a provision acknowledging assignment under certain conditions, it contains no provision forbidding assignment, the policy reciting that "The Company assumes no responsibility as to the validity or effect of any assignment."

■ In this State, both at common law and by statute, a policy of life insurance is an assignable instrument and, when not forbidden by the policy itself, or otherwise, it may be assigned, in the absence of fraud or a wagering contract, by the beneficial owner thereof, so as to pass the legal interest in the policy and enable the assignee to sue thereon in his own name. Clement v. New York Life Ins. Co., 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247; Hammers v. Prudential Life Ins. Co., 188 Tenn. 6, 216 S. W. (2d) 703; T. C. A. sec. 47-801.

In Clement v. New York Life Ins. Co., supra, the Court said that when a policy has once been issued to a beneficiary legally entitled thereto, he may, in good faith, assign it to another who has no insurable interest either by a transfer in his lifetime or by last will and testament. Citing numerous cases.

In the comparatively recent case of Hammers v. Prudential Life Ins. Co., supra [188 Tenn. 6, 216 S. W. (2d) 704], the Court said:

"So, also, the weight of authority is that, when a policy has once been issued to a beneficiary legally entitled, he may assign it to another, who has no insurable interest, either by a transfer in his lifetime or by a last will and testament. (3 Am. & Eng. Encyclopedia of Law, (2d) Ed.) p. 1025.

"But, while this is true, the transfer and assignment must be made in good faith, and not as a mere colorable evasion of the provision in regard to wagering contracts, and in order to validate or legalize the same." (Citing numerous cases including Clement v. New York Life Ins. Co., supra).

Furthermore, under the provision "Control of Policy" the "Nominator" (original beneficiary) was given complete control of the policy until the insured reached the age of 21, said provision providing:

"The application for insurance on which this policy has been issued having been made by Edward Francis Steiner herein called the Nominator, it is understood and agreed that the insurance contract is made with the said Nominator and is issued with the express understanding that, until the insured attains the age of twenty-one years, every transaction relating to this policy during the lifetime of the insured, including the right to exercise every option, enjoy every privilege, and receive every benefit provided by its terms, or allowed by the Company, shall be between the Company and (1) the Nominator, if living, otherwise (2) the Contingent Nominator (if a Contingent Nominator has been named in a proper written request filed with the Company at its Home Office) if living, otherwise (3) the legally appointed guardian of the insured, and all such transactions shall be valid without notice to or consent of the insured or any revocable beneficiary. It is also understood and agreed that after the insured has attained the age of twenty-one years, every such transaction shall be between the Company and the insured, and shall be valid without notice to or consent of any revocable beneficiary.

"The Contingent Nominator named in the application for this policy is Mary N. Steiner, mother of the insured."

It seems to us that when the "Nominator" or the beneficial owner transferred or assigned the policy to the Pioneer Bank, Trustee, he was merely exercising a "privilege" afforded him by its terms. To hold otherwise would be reading a provision into the policy obviously not intended.

Accordingly, for reasons indicated, we are constrained to sustain the defendant's assignments of error, and to reverse the decree of the learned Chancellor.

Because of the conclusions reached, it is unnecessary for us to pass upon complainant's assignments of error 1, 2 and 3, and assignment 4 complaining of the Chancellor's refusal to rule upon objections to certain evidence is overruled, because, assuming that the evidence objected to was inadmissible, the results reached would be the same.

It results that the decree rendered below will be reversed and a decree will be entered in this Court in favor of the Pioneer Bank, Trustee, after which the cause will be remanded to the Chancery Court of Hamilton County for all necessary references. The original complainant, The Volunteer State Life Insurance Company, will be taxed with all the costs.

McAmis, P. J., and Hale, J., concur.