UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2009

Charles R. Fulbruge III
Clerk

_____

No. 07-60482

_____

FIRST COLONY LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

v.

BOBBY L. SANFORD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

Before SMITH, and PRADO, Circuit Judges, and YEAKEL, District Judge.[*]

LEE YEAKEL, District Judge:

At issue in this diversity action is the validity of First Colony Life Insurance Company's ("First Colony") policy on the life of Emmanuel Morris.[1] Bobby Sanford purchased the Policy and was the primary beneficiary under the

_____

[*] District Judge of the Western District of Texas, sitting by designation.

[1] The First Colony policy at issue is life insurance Policy No. 8,288,530 ("Policy").

Policy. For about a year before his death, Morris lived with Sanford and his family. Upon Morris's death, Sanford filed a claim seeking to collect the Policy's $100,000 death benefit. First Colony declined to pay Sanford and commenced the underlying declaratory-judgment action seeking, inter alia, a declaration from the district court that under Mississippi law, because Sanford lacked an insurable interest in Morris, the Policy is void. Sanford answered and asserted several counterclaims against First Colony, including breach-of-contract and tort claims. Both parties moved for summary judgment. The district court granted summary judgment in favor of First Colony and denied Sanford's motion. The district court found as a matter of law that Sanford lacked an insurable interest in Morris's life, the Policy was void, and Sanford was unable to establish a legal and factual basis for recovery on any of his counterclaims. The court ordered First Colony to refund to Sanford the premiums Sanford paid on the Policy. We reverse the summary judgment and remand for further proceedings.

Background

In January 2004, Morris was seventeen years old and homeless; his father was dead, his mother was incarcerated serving a life sentence, and no family member was willing or able to care for him. Morris's grandmother asked Sanford, a released convicted felon who ministers to troubled teenagers, if

Sanford would care for Morris. Sanford agreed, took Morris into his home, and cared for him along with Sanford's three children.

In February 2004, Sanford hired an attorney to commence legal proceedings for Sanford to become Morris's guardian. A Final Judgment Appointing Guardian was rendered in the Chancery Court of Rankin County, Mississippi, appointing Sanford as General Guardian over Morris, a minor, upon Sanford's taking the oath prescribed by Mississippi law. See Miss. Code Ann. § 93-13-17 (2008). Sanford, however, never took the oath. No Letters of Guardianship were issued to Sanford.

Sanford hired another attorney, who assisted Sanford in having Morris's federal social-security payments redirected from Morris's aunt to Sanford. Although Morris had use of the social-security funds while in Sanford's care, Sanford asserts that he provided additional financial support to Morris.

Before Morris came to live with Sanford, Sanford purchased First Colony life insurance policies insuring each of Sanford's three children that, like the Policy insuring Morris, each provided a $100,000 death benefit and named Sanford the primary beneficiary. In August 2004, upon Morris's consent, Sanford applied for, was approved, and purchased the Policy on Morris's life through the same insurance agent Sanford used when purchasing the First

Colony life policies on his children. On the Policy application, Sanford represented that he was Morris's guardian.

In January 2005, Morris was reported missing. A few weeks later, Morris was found dead; the coroner determined Morris's death was caused by drowning. In March 2005, Sanford filed a claim for the $100,000 death benefit under the Policy, which First Colony denied. Initially, First Colony informed Sanford that payment was denied because Sanford was a suspect in Morris's death, although later First Colony told Sanford the denial was due to the fact that Sanford lacked an insurable interest in Morris's life. First Colony then commenced this action.

By affidavit, Sanford explained his relationship with Morris over the year that Morris lived with Sanford and his family. When Sanford met Morris during the first week of January 2004, Morris explained to Sanford that he was homeless and sleeping in abandoned houses in Batesville, Mississippi. Morris told Sanford that no one in his family could help him, but that Morris really wanted to work and to go to school. Sanford believed that he could help Morris, and asked Morris if he would like to come to Sanford's home in Florence, Mississippi. Morris said yes, and asked Sanford to take him in. Sanford offered him a room in his house, but Morris preferred to live in a small apartment on

4

Sanford's property. Sanford agreed, and Morris lived in the apartment under Sanford's control and supervision.

Sanford states that he treated Morris the same as he treated his own children, in that he provided Morris a place to live, financially supported him over and above what Morris received in social-security benefits, provided Morris with a car and insurance, paid for trips for Morris, including flying him to Houston for an Astros baseball game, took Morris out to eat, provided Morris food at Sanford's home, bought Morris clothes and other things he needed or wanted, gave him money for entertainment, helped Morris find a job at the grocery store where Sanford shops, took him to church, and introduced him to people with the church that he thought could help Morris then and in the future. Accompanying Sanford's affidavit is a photograph of Sanford and Morris together with Morris wearing a suit Sanford purchased for him. Sanford assisted Morris with opening a checking account and co-signed for him on the account.

Sanford also took Morris to visit Mississippi College and Hinds County Community College, where they met with admissions staff. Additionally, Sanford assisted Morris in applying for a scholarship at Mississippi College, which Morris received. Morris instead chose to enroll in Hinds Community

College, and Sanford paid Morris's tuition in cash and with funds from Sanford's ministry, the "Young People in Action Ministry." Included as summary-judgment proof are the scholarship award letter, a receipt for tuition to Hinds Community College, and copies of documents refunding to Sanford Morris's tuition due to the fact Morris was reported missing and never attended classes.

Sanford worked with Morris and assisted him in developing life goals and often discussed with him the importance of making good decisions and making something of himself and his life. In April 2004, Morris was in a car accident and needed medical treatment. At the hospital, Sanford signed as the party responsible for Morris and Sanford paid medical bills incurred by Morris related to the accident.

Sanford hoped that Morris would receive a college education and Morris would assist Sanford in the future with his youth ministry. Sanford stated that he treated Morris just like his own children when Sanford brought Morris into his home. As to Morris, Sanford stated that he intended to and did undertake all obligations and duties that a parent would owe to a child.

In rendering summary judgment in favor of First Colony, the district court found: (1) Sanford never became Morris's legal guardian; (2) Sanford's argument that Mississippi law allows his substantial relationship with Morris, which was

engendered by love and affection, to establish an insurable interest in Morris's life was unavailing; and (3) Sanford failed to show that an issue of material fact existed regarding whether he had a legal or economic interest in the continued life of Morris; rather Sanford showed only the mere possibility or expectation of a future economic relationship, which under Mississippi law is insufficient to establish an insurable interest. Thus, the district court dismissed Sanford's claims for breach of contract and fiduciary duty. The district court declared the Policy void and ordered First Colony to return to Sanford the premiums Sanford had paid for the Policy. Sanford appeals.

## Standard of review

"We review a district court judgment rendered on cross-motions for summary judgment de novo." Cedyco Corp. v. PetroQuest Energy, LLC, 497 F.3d 485, 488 (5th Cir. 2007). As both parties moved the district court for summary judgment, we independently review each motion with its supporting proof. See White Buffalo Ventures, LLC v. Univ. of Tex. at Austin, 420 F.3d 366, 370 (5th Cir. 2005). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  When reviewing a summary judgment, although we construe all facts and draw all justifiable inferences in the light most favorable to the nonmoving party, the nonmoving party must set forth specific facts to establish that there is a genuine issue for trial.  See Anderson, 477 U.S. at 250; Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  If, however, the nonmovant's proof lacks probative value as to the genuine issue, summary judgment is appropriate.  Anderson, 477 U.S. at 249.  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  Hamilton v. Seque Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  Id.  Finally, a summary assertion made in an affidavit is simply not enough proof to raise a genuine issue of material fact.  Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 98 (5th Cir. 1993).  With these standards in mind, we review the applicable law and the record before the district court.

Applicable law

In reviewing the district court's rulings in this diversity case, we apply the substantive law of Mississippi.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-79 (1938).  Mississippi follows the general rule that for a purchaser of an

insurance policy to be entitled to proceeds from such policy, the purchaser must have an insurable interest in the property or life insured. See Se. Fid. Ins. Co. v. Gann, 340 So. 2d 429, 434 (Miss. 1976), Nat'l Life & Accident Ins. Co. v. Ball, Ball, 127 So. 268, 268 (Miss. 1930). For there to be an insurable interest in the life of another,

> "there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."

Ball, 127 So. at 268 (quoting Warnock v. Davis, 104 U.S. 775, 779 (1881)). Mississippi law provides that a person has an insurable interest in the life, body, and health of another individual if one of the following exists:

> (a) The individual and the insured are related closely by blood or by law, a substantial interest engendered by love and affection [sic];
>
> (b) The person has a lawful and substantial economic interest in having the life, health or bodily safety of the insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the insured;

* * *

> (d) A person has a lawful interest in having the funeral expenses of the insured paid through insurance, provided the insured has knowledge of such insurance.

Miss. Code Ann. § 83-5-251(3)(a), (b), (d) (2008) ("Section 83-5-251").[2]

Regarding insuring minors, Mississippi law provides:

> No life or health insurance contract upon an individual, except a contract of group life insurance or annuity or of group health insurance, or replacement contracts, shall be made or effectuated, unless at the time of the making of the contract the insured, applies therefor or has consented thereto in writing or has had the application acknowledged in writing by the insurance company, except that any person having an insurable interest in the life of a minor or any person upon whom a minor is dependent for support and maintenance may effectuate insurance upon the life of or pertaining to such minor.

Miss. Code Ann. § 83-5-253 (2008) ("Section 83-5-253") (emphasis added.)

Analysis

Here, as before the district court, Sanford argues that independently of whether a formal legal guardianship existed, the summary-judgment proof establishes that he was related closely by law to Morris by virtue of the final

---

[2] Section 83-5-251 provides five means for establishing an insurable interest in the continued life of another individual, however only the three mentioned here are arguably applicable in this case. Omitted provisions (c) and (e) relate to stocks, businesses, and charitable institutions.

judgment appointing him guardian of Morris and his relationship with Morris. Sanford contends that he was in loco parentis to Morris, thereby establishing that a close legal relationship existed between Sanford and Morris, engendered by love and affection, which gives rise to Sanford's insurable interest in Morris. Sanford contends, alternatively, that under Section 83-5-253, Sanford has shown that Morris, a minor, was dependent upon Sanford for support and maintenance. Thus, Sanford argues, the summary judgment should be reversed.

First Colony takes issue with Sanford's contention that he stood in loco parentis to Morris.[3] First Colony casts the summary-judgment proof in a light unfavorable to Sanford. However, as we are reviewing First Colony's motion and the trial-court judgment rendered against Sanford, we view all facts and draw all reasonable inferences in Sanford's favor.

First Colony notes that relationship by affinity is not always alone sufficient to confer an insurable interest. See Ball, 127 So. at 268 (son-in-law lacked insurable interest in mother-in-law because he failed to show reasonable

---

[3] First Colony contends that Sanford failed to disclose to the court that rather than taking Morris into his home as his own child, Sanford rented Morris a room behind his house and required Morris to pay his own utility bills. Additionally, First Colony contends that after Sanford had Morris's social-security payments redirected to Sanford, he did not use the entire payment for Morris's benefit; rather Sanford kept the money and only paid Morris an allowance. First Colony further argues that Sanford never sought to terminate Morris's mother's parental rights or to adopt Morris.

11

expectation of any benefit in continuance of her life necessary to form basis of insurable interest). First Colony argues that even assuming Sanford was standing in loco parentis to Morris, lacking is any authority for the proposition that in Mississippi an individual standing in loco parentis to a minor gives rise to the individual's having an insurable interest in the life of that minor.

The district court determined neither whether Sanford stood in loco parentis to Morris, nor if he was, whether that fact, along with any additional facts and circumstances, would give rise to Sanford and Morris being related by law to a degree that would give rise to Sanford's having an insurable interest in Morris's life. Miss. Code Ann. § 83-5-251(3)(a).

We have found no Mississippi authority, and the parties have directed us to none, holding that the relationship of an individual standing in loco parentis to a minor establishes that the individual has an insurable interest in the minor, nor have we found any authority to the contrary.

Mississippi recognizes the doctrine of in loco parentis and defines a person acting in loco parentis as

> one who has assumed the status and obligations of a parent without a formal adoption. Thus, any person who takes a child of another into his home and treats [the child] as a member of his family, providing parental supervision, support and education, as if [the

child] were his own child is said to stand (in loco parentis.)

Logan v. Logan, 730 So. 2d 1124, 1126 (Miss. 1998) (internal citations and quotations omitted). This legal relationship has been recognized by Mississippi courts to award child custody, visitation, and workers' compensation benefits and to impose parental obligations on persons standing in loco parentis to a minor. See J.P.M. v. T.D.M., 932 So. 2d 760, 767-69 (Miss. 2006) (child custody, visitation, and support); Logan, 730 So. 2d at 1126-27 (child custody); In re M.D.B., 914 So. 2d 316, 319-21 (Miss. Ct. App. 2005) (child custody and visitation); W.R. Fairchild Constr. Co. v. Owens, 224 So. 2d 571, 575 (Miss. 1969) (workers' compensation death benefits). Additionally, the Supreme Court of Mississippi has stated:

> A person in loco parentis may be defined as one who has assumed the status and obligations of a parent without a formal adoption. The rights, duties and liabilities of one standing in loco parentis are the same as those of a natural parent. Whether the relationship exists is a matter of intention and of fact to be deduced from the circumstances of the particular case.

Farve v. Medders, 128 So. 2d 877, 879 (Miss. 1961). "A person stands in loco parentis to a child only when the person intends to assume toward the child the status of a parent." Worley v. Jackson, 595 So. 2d 853, 855 (Miss. 1992) (citing

13

59 Am. Jur. 2d, Parent and Child § 88). The Worley court determined that particular facts presented precluded its holding that grandparents stood in loco parentis to their grandchildren. Id. Specifically, the Worley court noted that the grandparents only sought from the court an order of temporary custody of their grandchildren, that it was apparent that the grandparents intended to restore custody of the children to their mother when she was no longer incarcerated, and that it was doubtful that the children regarded the grandparents as their parents, as they continued to visit their mother in jail. Id.[4]

In light of the fact that Mississippi recognizes the legal relationship of in loco parentis, finding an in loco parentis relationship between Sanford and Morris and considering that relationship along with other factors could lead to Sanford's having an insurable interest in Morris's life. As the district court did not consider whether Sanford was standing in loco parentis to Morris, and as the record reflects factual disputes about whether Sanford stood in loco parentis to Morris, summary judgment was not appropriate in this case. We therefore remand this cause to the district court for additional consideration. On remand

---

[4] In other jurisdictions, the relationship of in loco parentis alone has been held to establish an individual's insurable interest in the life of a minor. See Volunteer State Life Ins. Co. v. Pioneer Bank, Tr., 327 S.W.2d 59, 62 (Tenn. Ct. App. 1959); see also 3 Couch on Insurance § 43:5 (3d ed. 2008) (citing Peoples First Nat'l Bank & Trust Co. v. Christ, 65 A.2d 393, 395 (Pa. 1949)) ("[W]here a person stands toward another in loco parentis they each have an insurable interest in the other's life[.]").

the district court should determine whether Sanford stood in loco parentis to Morris's life and if so, whether that relationship alone or along with other factors vested Sanford with an insurable interest in Morris.

The summary judgment is REVERSED and the cause is REMANDED for further proceedings consistent with this opinion.