GLADNEY *v.* HOPKINS

No. 40747 April 21, 1958 102 So. 2d 181

*Wingo & Finch,* Hattiesburg, for appellant.

*Morse & Morse,* Gulfport, for appellee.

KYLE, J.

This is a habeas corpus proceeding involving the custody of two minor children, Oscar Gladney, a minor 13 years of age, and Claudia Gladney, a minor 12 years of age. The petition for a writ of habeas corpus was filed on July 5, 1957, by Alice Gladney, the paternal grandmother of the two children, against Arletha J. Hopkins, the maternal grand mother of the two children. The record shows that the mother of the two children is Mattie Mae Gladney Miles. The father of the two children is Oscar Gladney, Sr., who resides in Los Angeles, California.

The petitioner alleged in her petition that Oscar Gladney, Sr., and Mattie Mae Gladney Miles separated when the children were two and three years of age, respectively; that the children were placed in the custody of the petitioner on July 1, 1947, and that the petitioner had retained the custody of the two children and had borne the entire expense of rearing them up to the time of the filing of the petition. The petitioner further alleged in her petition that on or about April 1, 1957, the respondent, Arletha J. Hopkins, the maternal grandmother, came to the petitioner's home in the City of Hattiesburg, and took

the two children to her home in Gulfport, and thereafter refused to surrender the possession of the children to the petitioner; that the petitioner had become greatly attached to the children, and they loved her; and that it would be to the best interest of the children for them to be delivered back into her custody.

In her answer to the petition, the respondent, Arletha J. Hopkins, admitted that the children had been placed in the care and custody of the petitioner, Alice Gladney, after the separation of their parents, but denied that she had had the complete care and custody of the children for the past ten years. The respondent admitted that approximately three months before the date of the filing of the petition she had brought the children from Hattiesburg to Gulfport. She averred in her answer, however, that she had picked up the children for the purpose of delivering them to her daughter, who was the mother of the children, and who was entitled to the custody of the children, and that she had delivered the children to their mother and no longer had them in her custody.

The cause was heard by the County Judge on July 10, 1957, and after hearing the testimony the County Judge found that the physical possession and custody of the two minor children at the time of the hearing was in their mother, Mattie Mae Miles Dixon, and that the mother was entitled to the custody of the children to the exclusion of Alice Gladney, the paternal grandmother, and that the prayer of the petition should be denied.

From the order denying the relief prayed for the petitioner has prosecuted this appeal.

The appellant's attorney argues only one point as ground for reversal of the judgment of the lower court, and that is, that the court erred in denying the relief sought by the petitioner in the habeas corpus proceeding.

The testimony of the witnesses is substantially as follows:

Alice Gladney testified that she lived in Hattiesburg, but worked in Chicago; that she had had the possession

and custody of the two children for a period of ten years prior to the date of the hearing; and that no one, except her, had contributed anything to the support of the children during the 10-year period. The little boy was three years old and the little girl was two years old at the time they were turned over to her. Alice stated that she had been going back and forth to Chicago since 1943. She worked at a job there as power machines operator, and stayed up there about six months at a time. The children were in Gulfport when the father and mother separated, and their father asked her to take the children on with her. She took the children with her and hired a woman to take care of them while she worked. She furnished all their clothing, and neither the mother nor the maternal grandmother had contributed anything toward the support of the children during the 10-year period. She had raised the children as her own. Alice testified that Arletha had taken the children from her home at Hattiesburg and had carried them to Gulfport sometime during the spring. Alice was in Chicago at that time, and she received a letter from the little girl about April 1, 1957, saying, ''Big Mamma, Grandmother has taken us away. Write a fast letter for her to bring us back.'' Alice testified that she had sent $50 for food and $40 for clothing for the children since Arletha took them to Gulfport; that she came to Gulfport about a week before the trial, and told Arletha that she had come to get the children, but Arletha would not let her have them. On cross-examination Alice stated that the children were living in Hattiesburg with her husband and a 15-year old married aunt when Arletha picked them up and carried them to Gulfport; and when she learned that the children had been carried to Gulfport she was very much upset. She had raised the children and wanted to keep them herself. Alice stated that she put the children in school in Chicago while they were in Chicago and in Hattiesburg while they were in Hattiesburg. Both of the children were in the

sixth grade. Alice stated that Mattie Mae, the mother of the children, had had five husbands; that Mattie Mae was living in Hattiesburg when she went to Chicago; that Mattie Mae told her when she left that she would look after the children, but she did not do so. Alice stated that she put the children on her income tax return, and sent $10 a week to Hattiesburg to take care of the children while they were in Hattiesburg. She stated that Arletha sent no money whatever to help support the children.

Claudia Gladney testified that she was 12 years old and in the sixth grade. She called Alice Gladney "Big Mamma." She had lived with her as long as she could remember. She stated she wanted to go back to Big Mamma, and that her little brother wanted to go back. Big Mamma kept them in school, gave them plenty to eat, nice clothes, saw that they bathed regularly. Her other grandmother never sent them anything. Big Mamma sent them to church. On cross-examination Claudia stated that she was in the sixth grade because grandmother had taken her back and forth to Chicago. Claudia stated that her mother and her grandmother Hopkins had been good to her, and that she loved her grandmother Hopkins. Oscar Gladney testified that he was 13 years old and in the sixth grade; that he had been in Gulfport about three months. He had lived with Big Mamma as long as he could remember. He wanted to go back with Big Mamma. His sister felt the same way. He said his grandmother Hopkins had been good to him since he had been down to Gulfport. Reverend R. W. Willard testified that he was an ordained minister of the Baptist Church at Hattiesburg; that he had known Alice Gladney 30 or 35 years; and that she was a very good woman and had made a good mother for the children. He knew nothing about the atmosphere of the children in Chicago.

Arletha J. Hopkins testified that she was the mother of Mattie Mae Dixon, the mother of the two children, and that she lived in Gulfport and owned her own home,

which was a six-room house, including a bathroom. Her daughter lived in Hattiesburg, but expected to move back to Gulfport ''this Friday''. She stated that she had had the custody of the two children since the last day of March 1957. Their grandfather, Burl Gladney, Alice Gladney's husband, gave her the privilege of bringing them home. Their grandmother, Alice Gladney, was in Chicago at that time. There was nobody in the house taking care of the children except Burl. Sometime he would have to leave the children, and they would be out of school three days in succession. She admitted that Big Mamma had sent $10 every two weeks to help take care of the children, while they were in Gulfport. Arletha stated that she spent $15 a week taking care of the children, and that the children attended school in Gulfport. She admitted that before she brought them to Gulfport she did not contribute anything to their support. She stated that she loved the two children, and that her daughter loved the children and had tried to get them back from Big Mamma. On cross-examination Arletha admitted that Alice Gladney had had the children since they were two or three years of age, and that she herself had never sent them any money or any presents.

Mattie Mae Dixon testified that she was the mother of the two children, and that she had been married four times. She and her last husband, Henry Dixon, had been divorced six years. When she and Oscar Gladney separated she brought the children home to her mother. Alice came and begged her to let her keep the children for a while; Alice did not want her to give them to her; she was not trying to take them away from her. Mattie Mae stated that the children came to visit her while she lived in Hattiesburg; that she stayed there with Alice and her husband from 1953 until 1955, and Alice was in Chicago part of that time. She was asked whether Alice sent her any money. Her answer was, ''No, she sent money to her husband and he bought when he felt like it.'' Mattie

Mae stated that in 1955 she went over into another part of town, and she asked Alice to leave the children with her. Alice refused to do so and left the children with their grandfather and Mattie Mae's younger sister who was 16 years of age. Mattie Mae stated that she had never given the children to Big Mamma, and she wanted them back. She said she was coming back to Gulfport on the next Friday and was going to live with her mother, and she could work and take care of the children. On cross-examination Mattie Mae admitted that Alice had provided well for the two children during the ten years that she had had them, and that she herself had never sent them any money; that the only one who had taken care of the two children was their grandmother Alice Gladney.

■■ ■ We think the trial judge erred in denying the prayer of the petitioner and in dismissing the petition. This was not a contest between the paternal grandmother and the mother of the two children. The petition alleged, and the proof shows that the physical possession and custody of the two children was in the respondent, Arletha J. Hopkins, at the time the petition was filed on July 5, 1957, and on the date the writ was issued. Mattie Mae Dixon, the mother of the children, was living in Hattiesburg at that time, and did not have the custody of the children; and the fact that Mattie Mae came to Gulfport for the hearing and testified as a witness for the respondent, and that she expected to move back to Gulfport after the hearing and live with her mother, did not make her a party to the suit or deprive the petitioner of her right to have the issue presented by her petition determined on its merits.

The testimony in the record clearly shows that, as between the two grandmothers, the appellant was entitled to a judgment awarding to her the custody of the two children. Alice testified, and Arletha and Mattie Mae both admitted, that Alice had had the care and custody of the two children for a period of approximately ten years; and that neither Arletha nor Mattie Mae had con-

tributed anything to the support of the two children during that period of time. The proof also showed that Alice had made a good mother for the children; and that Arletha had taken the children from Alice's home without Alice's knowledge or consent, while Alice was in Chicago working at her job to make a living for herself and the two children. Both children testified that they wanted to go back to "Big Mamma."

██ █ In a contest of this kind the welfare of the child or children is a matter of chief importance; and where the child is sufficiently mature in mind to form a judgment, the wishes of the child may well be the controlling factor. 39 C. J. S., p. 575, Habeas Corpus, par. 41; Forbes v. Warren, 184 Miss. 526, 186 So. 325; Governale v. Haley, (Miss. 1956), 87 So. 2d 686. ██ █ The question as to the right of the mother to regain possession of the children or to have the custody awarded to her is not before us for consideration on this appeal. Her rights, if any, must be determined in a proper proceeding to which she is a party.

For the reasons stated above the judgment of the county court is reversed, and judgment will be entered here awarding the custody and the right of possession of the two children to the appellant, but without prejudice to the right of the mother of the two children to have her claim to the custody of the two children determined in a proper proceeding instituted by her for that purpose, if she wishes to institute such proceeding.

Reversed and judgment rendered for apellant.

*McGehee, C. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.