595 So.2d 853 (1992)
James Willard WORLEY and Lisa Jane Worley
v.
Joseph JACKSON and Martha Louise Jackson.
No. 90-CA-0695.
Supreme Court of Mississippi.
February 26, 1992.
*854 Tommy D. Cadle, Booneville, Sarah C. Jubb, Gerald A. Gafford, Oxford, for appellant.
Joseph C. Langston, Langston Langston Michael & Bowen, Booneville, for appellee.
Before HAWKINS, P.J., PRATHER and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the Court:
James Willard Worley and Lisa Jane Worley appeal an order of the Chancery Court of Itawamba County awarding custody of their grandchildren, Amanda Jane Jackson, Joshua Dale Jackson and Jacqueline Jackson, to the children's paternal grandparents, Joseph Jackson and Martha Louise Jackson. Finding no error, we affirm.

FACTS
Amanda, Joshua, and Jacqueline are the children of Bobby Dale Jackson and Jane Sue Worley Jackson. Amanda was born June 14, 1984. Joshua was born August 5, 1985, and Jacqueline was born March 9, 1987. On September 16, 1989, Bobby Dale Jackson died from a gunshot wound to the head and Jane Sue Worley Jackson and her first cousin, David Wayne Cartwright, were charged with murdering him. Jane Jackson was incarcerated in the Itawamba County Jail and her bail was set at $50,000, an amount she was unable to make.[1]
On September 19, 1989, Jane Jackson and her parents, James Willard Worley and Lisa Jane Worley, filed an ex parte petition asking the Chancery Court of Itawamba County to award temporary custody of Amanda, Joshua and Jacqueline to the Worleys. The chancellor granted the petition and signed the order on September 22, 1989. Apparently unaware of the order granting temporary custody to the Worleys, Joseph and Martha Jackson filed a petition for emergency, temporary and permanent custody of the children in the Chancery Court of Prentiss County on November 10, 1989. Upon discovering the order of September 22, 1989, the Jacksons filed a Petition To Set Aside Order and Complaint and Motion To Terminate Parental Rights in the Chancery Court of Itawamba County. In this petition, the Jacksons asked the chancellor to terminate the parental rights of Jane Jackson, set aside the order granting temporary custody of the children to the Worleys and grant permanent custody *855 of the children to the Jacksons. The Jacksons later withdrew that part of the petition requesting that the chancellor terminate the parental rights of Jane Jackson.
A hearing regarding the matter was held on March 26, 1990, and continued on May 3, 1990. The chancellor delivered his opinion on May 11, 1990, holding that the best interests of the children would be served if they were in the custody of the Jacksons. The chancellor set aside the temporary order of September 22, 1989, and placed the children in the custody of the Jacksons. The chancellor granted the Worleys extensive visitation rights and ordered that a formal guardianship account be established for the children. The Worleys now appeal to this Court.

LAW

I. WAS THE AWARD OF PERMANENT CUSTODY AND GUARDIANSHIP OF THE MINOR CHILDREN TO ANY PARTY OTHER THAN THEIR NATURAL MOTHER CONTRARY TO LAW AND UNSUPPORTED BY PROOF?
In this assignment of error, the Worleys contend that the trial court erred in granting custody to the Jacksons since Jane Jackson, the mother of the children, had the sole right to custody of her children. The Worleys argue that Jane's selection of them as caretakers of her children was a legitimate exercise of her right and duty to control her children.
The chancellor did not err in his handling of the custody issue as between the rights of Jane Jackson and her father-in-law and mother-in-law, Mr. and Mrs. Jackson. At the time the petition was brought, Jane Jackson was unable to care for the children. She acknowledged this fact when she joined her parents' petition asking the court to grant them temporary custody of the children. The chancellor stated in his opinion that Jane Jackson's fitness to have custody of the children necessarily had to be questioned. The chancellor's decision awarding custody of the children to the Jacksons in no way affects Jane Jackson's right to petition the chancellor when she is released from prison and ask that custody of the children be restored to her. See Gladney v. Hopkins, 233 Miss. 342, 102 So.2d 181 (1958).
The Worleys also contend in this assignment of error that they were entitled to custody of the children as against the Jacksons because they had obtained in loco parentis status. This Court has defined a person in loco parentis as one who has assumed the status and obligations of a parent without a formal adoption. Farve v. Medders, 241 Miss. 75, 81, 128 So.2d 877, 879 (1961); see also In re Guardianship of Watson, 317 So.2d 30, 31 (Miss. 1975); 59 Am.Jur.2d, Parent and Child § 88. In W.R. Fairchild Constr. Co. v. Owens, 224 So.2d 571, 575 (Miss. 1969), the Court stated that any person who takes a child of another into his home and treats it as a member of his family, providing parental supervision, support and education as if it were his own child, is said to stand in loco parentis. A person stands in loco parentis to a child only when the person intends to assume toward the child the status of a parent. 59 Am.Jur.2d, Parent and Child § 88.
In this case, the Worleys did not stand in loco parentis to the children. Although they did take the children into their home and care for them, they did not intend to assume the status of a parent toward the children. This is evident from the fact that they only petitioned the court for temporary custody of the children. They apparently intended to restore custody of the children to their mother when she was no longer incarcerated. It is doubtful that the children regarded the Worleys as their parents since they still visited their mother in jail. Also, unlike Farve, supra, the children knew their parents and lived with them until the death of their father. These facts preclude in loco parentis status.

II. WAS THE CHANCELLOR'S FINDING THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY PLACING THEM IN THE PERMANENT CUSTODY AND CONTROL OF THE PATERNAL GRANDPARENTS MANIFESTLY IN ERROR?
The findings of fact by the chancellor will generally not be overturned on *856 appeal unless they are manifestly wrong. Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989); Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986). The polestar consideration in child custody cases is the best interest and welfare of the child. Carr v. Carr, 480 So.2d 1120, 1123 (Miss. 1985); Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983). In Albright, the Court set out certain factors to be considered in ascertaining the best interest of children of "young and tender age." Along with the age of the child, these factors include:
health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Albright, 437 So.2d at 1005. These guidelines were extended to apply to all original custody determinations involving minor children in Carr, 480 So.2d at 1123.
In his opinion, the chancellor referred to the factors listed in Albright and Carr as guidelines for his decision to award custody to the Jacksons. The chancellor stated that the homes of both the Worleys and Jacksons were essentially fit and suitable for the children and that either set of grandparents, in the absence of the other, would be suitable custodians of the children. However, he found that as between the two, the best interest of the children would be served by placing them in the custody of the Jacksons with the Worleys having very liberal visitation rights. The chancellor stated that although the Jacksons were a bit older than the Worleys, Mr. Jackson had a full-time job and Mrs. Jackson was home during the day. Mr. Worley, however, was disabled and Mrs. Worley was away from the house at work each day during "crucial" periods of the day, when the children would leave for school and return from school. He also addressed a fact outside the Albright factors, that the Jacksons' income was higher than the Worleys' income.
The chancellor also believed that the children would have better educational opportunities with the Jacksons due to the fact that most of the Jacksons' children graduated from high school and the Jacksons placed great emphasis on education. Another consideration was the fact that the Jacksons' home would be less crowded since two of the Worleys' children lived at home.
Under this record, we cannot say that the chancellor was manifestly wrong in his decision. It is evident that the chancellor carefully considered the factors set out in Albright. There was substantial evidence to support an award of custody to either side. The chancellor had the opportunity to observe the parties during the hearing and to determine the best interest of the children. The affirmance of the award of custody to the Jacksons is without prejudice to the right of Jane Jackson in any subsequent proceeding to seek to have custody restored to her.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Jane Jackson later pled guilty to the murder of her husband Bobby Dale Jackson and was sentenced to twenty-two years in the custody of the Mississippi Department of Corrections.