KING, C.J.,
 

 for the Court.
 

 ¶ 1. Jamie Renee McCraw (McCraw) appeals a December 4, 2007, judgment of the Marion County Chancery Court granting-joint legal custody of her minor child, Ash-ton Renee Buchanan (Ashton), in both McCraw and Mary Elisabeth Thornhill (Thornhill), the child’s paternal grandmother. The judgment also ordered McCraw and Thornhill to share equally the costs of the guardian ad litem. McCraw appeals, raising two issues: (1) whether the chancellor erred in failing to follow the recommendation of the guardian ad litem to grant physical custody of the minor child to the natural parent rather than a third party, and (2) whether the chancellor erred in failing to award McCraw attorney’s fees and costs and in assessing guardian ad litem’s fees equally against the parties without any consideration of McCraw’s financial abilities. Finding no error, we affirm the judgment of the chancellor.
 

 FACTS
 

 ¶ 2. Eric Buchanan (Buchanan) and McCraw were married on June 30, 1997. The couple lived together as husband and wife until they finally separated on June 15, 1999. Buchanan and McCraw had one child, Ashton, born on October 21, 1997, who is the minor child of this dispute. On July 8, 1999, Buchanan and McCraw filed for divorce on the ground of irreconcilable differences and included a child custody, child support, and property settlement agreement. On November 9, 1999, McCraw amended the complaint requesting a divorce on the ground of habitual cruel and inhuman treatment and seeking physical custody of Ashton. On September 21, 2000, the trial court gave temporary custody of Ashton to McCraw and reasonable visitation to Buchanan. Buchanan was ordered to pay $160 per month in child support and $40 per month in transportation costs.
 

 ¶ 8. On December 5, 2000, Buchanan and McCraw agreed to a divorce based on irreconcilable differences and agreed to share joint legal custody of Ashton with primary physical custody placed in McCraw. Buchanan was granted visitation rights in alternate two-week periods and at other specified time periods, and he was ordered to pay $175 per month in child support. A final judgment of divorce was entered on December 13, 2000.
 

 ¶ 4. Over the next several years, Buchanan and McCraw were unable to effectively share joint legal custody of Ashton. During this time, the parties filed various requests for the court’s intervention such as a motion for emergency custody, a petition for custody, a motion for relief from judgment, and a complaint for modification of custody. On March 6, 2002, the chancellor directed the parties to adhere to the provisions of the December 13, 2000, decree.
 

 ¶ 5. On July 6, 2004, Buchanan and his mother, Thornhill, jointly filed a petition for custody of Ashton and other relief, requesting that the chancellor give Buchanan primary physical custody and McCraw specified visitation. Because Buchanan had been convicted and was incarcerated for a drug offense when the petition was filed, Ashton would primarily be residing with Thornhill. On January 12, 2005, the court continued a scheduled custody hearing and directed Buchanan to exercise his custody of Ashton in the home and presence of Thornhill.
 

 ¶ 6. On July 26, 2006, an agreed order was entered granting legal custody of Ash-ton to both McCraw and Thornhill. The order provided scheduled visitation to
 
 *982
 
 Thornhill, ordered that Ashton continue to receive counseling, and directed that Ash-ton’s social security check be deposited into a court-administered guardianship registry. McCraw and Thornhill were ordered to serve as co-guardians of the funds. The funds from this account were to be distributed to McCraw to meet Ash-ton’s needs as per the court order.
 

 ¶ 7. On September 28, 2006, Thornhill filed a complaint to cite McCraw for contempt of court and petitioned the court for modification of custody. In that complaint, Thornhill alleged that McCraw had failed to comply with the terms of the July 2006 order. In response to Thornhill’s petition, McCraw filed a counter-petition requesting the court to grant McCraw sole legal custody of Ashton and reduce Thorn-hill’s visitation to correspond to the standard minimal visitation awarded a natural parent.
 
 [1]
 
 On January 16, 2007, following a hearing on a motion for appointment of guardian ad litem, the chancellor appointed James D. Johnson as guardian ad litem to represent Ashton in these proceedings. The chancellor also ordered each party to deposit $400 into the court’s registry as payment toward the fees of the guardian ad litem.
 

 ¶ 8. At the April 14, 2007, hearing on Thornhill’s emergency motion for immediate custody of Ashton, the chancellor directed Johnson to increase home visits and to see Ashton on the days when she was in the homes of McCraw and Thornhill. The Mississippi Department of Human Services was ordered to conduct an unannounced home study of both parties. The Pine Belt Mental Healthcare Resources was directed to produce up-to-date records to the attorneys for the parties, the trial court, and the guardian ad litem. Dr. John Pat Galloway, court-appointed psychologist, was directed to interview Ashton and the parties. Based on information provided to the court by Dr. Galloway, on July 11, 2007, the chancellor ordered the Mississippi Department of Human Services to conduct an investigation of McCraw. After a hearing on September 4, 2007, the chancellor ruled on December 4, 2007, that McCraw and Thornhill would have joint legal custody of Ashton with primary physical custody vested in Thorn-hill. McCraw was given visitation privileges, and both McCraw and Thornhill would serve as co-guardians of the guardianship established for Ashton. The chancellor also ordered both McCraw and Thornhill to pay the costs of Johnson, the guardian ad litem. Aggrieved, McCraw timely appeals.
 

 STANDARD OF REVIEW
 

 ¶ 9. In cases reviewing the chancellor’s award of child custody, “[rjeversal of a chancellor’s judgment occurs only if a chancellor is ‘manifestly wrong’ or ‘applied an erroneous legal standard.’ ”
 
 J.P. v. S.V.B.,
 
 987 So.2d 975, 978-79(¶7) (Miss.2008) (citations omitted). The appellate court “will not reverse the chancellor’s ‘factual findings where there is substantial evidence in the record supporting these findings of fact.’ ”
 
 Id.
 

 ANALYSIS
 

 I. Whether the chancellor erred in failing to follow the recommendation of the guardian ad litem to grant physical custody of the minor child to the natural parent rather than to a third party.
 

 ¶ 10. McCraw contends that the trial court erred in failing to follow the recommendation of the guardian ad litem to
 
 *983
 
 grant the natural mother primary physical custody of the minor child. McCraw also argues that the chancellor should have made a determination as to her current fitness to parent Ashton before conducting an
 
 Albright
 
 analysis, which McCraw claims was performed with preference-like consideration toward Thornhill. Thornhill contends that the chancellor’s ruling was proper because McCraw failed to comply with the terms and provisions of the July 26, 2006, custody order. Thornhill alleges that: she was denied her scheduled visitation; McCraw failed to take Ashton to Ashton’s scheduled doctor appointments and counseling sessions; and McCraw failed to deposit Ashton’s social security check into the court-administered guardianship registry.
 

 A. Recommendation of the Guardian ad litem
 

 ¶ 11. Pursuant to Mississippi Code Annotated section 93-5-23 (Supp. 2008), in child custody cases where allegations of abuse are at issue, a guardian ad litem shall be appointed.
 
 See also Robison v. Lanford,
 
 841 So.2d 1119, 1126(¶ 22) (Miss.2003). “Although [the Mississippi Supreme Court] has required a guardian ad litem to perform tasks competently, there is no requirement that the chancellor defer to the findings of the guardian ad litem, as is proposed by the petitioners. Such a rule would intrude on the authority of the chancellor to make findings of fact and to apply the law to those facts.”
 
 S.N.C. v. J.R.D.,
 
 755 So.2d 1077, 1082(¶ 17) (Miss.2000).
 

 ¶ 12. However, the supreme court has held that:
 

 A chancellor shall include at least a summary review of the qualifications and recommendations of the guardian ad li-tem in the court’s findings of fact and conclusions of law. Further, we hold that when a chancellor’s ruling is contrary to the recommendation of a statutorily required guardian ad litem, the reasons for not adopting the guardian ad litem’s recommendation shall be stated by the court in the findings of fact and conclusions of law.
 

 Id.
 
 at (¶ 18).
 

 ¶ 13. We find that the allegations complained of by Thornhill did not mandate the appointment of a guardian ad litem. Therefore, the appointment of the guardian ad litem by the chancellor was discretionary. Notwithstanding the fact that the appointment of a guardian ad litem was discretionary, the chancellor noted in his findings of fact and conclusions of law his consideration of the reports of Dr. Galloway and that of the guardian ad litem. The chancellor stated in his findings that he gave careful consideration to the guardian ad litem’s recommendations as well as the reports, opinions, and testimonies of other witnesses. The chancellor observed that his consideration of the facts led him to a conclusion different than that of the guardian ad litem as to which party should have primary physical custody of Ashton. While the appointment of a guardian ad litem was not mandatory, the chancellor gave specific reasons for declining to follow the guardian ad litem’s recommendation. This issue is without merit.
 

 B. Fitness of Parent and Custody
 

 ¶ 14. “It is true that there is a presumption that a natural parent is the proper custodian for their child. However, it has been stated many times that this presumption can be overcome by a clear showing that the parent is unfit.”
 
 In re Custody of M.A.G.,
 
 859 So.2d 1001, 1003(¶ 5) (Miss.2003) (internal citations omitted). In fact, Mississippi Code Annotated section 93-13-1 (Rev.2004) states in pertinent part: “if any father or mother be
 
 *984
 
 unsuitable to discharge the duties of guardianship, then the court, or chancellor in vacation, may appoint some suitable person.... ”
 

 f 15. “[A] finding of unfitness is necessary to award custody to a third party over a natural parent. This finding is necessary before the court can decide the best interests of the children.”
 
 In re Guardianship of Brown,
 
 902 So.2d 604, 609(¶ 14) (Miss.Ct.App.2004) (citations omitted). “Grandparents have no right of custody of a grandchild, as against a natural parent, a premise reflected in our frequent statements, in custody contests between a parent (or parents) and grandparents, the parent(s) prevail absent a showing they have abandoned the child or are otherwise totally unfit.”
 
 Ethredge v. Yawn,
 
 605 So.2d 761, 764 (Miss.1992).
 

 ¶ 16. The chancellor filed a memorandum opinion that included the history of this case, a discussion and analysis of the evidence before him, and a discussion of his findings of facts and conclusions of law. While noting this to be an atypical custody case, the chancellor’s opinion provided a thorough analysis of the
 
 Albright
 
 factors and specifically addressed the parental fitness of McCraw. In that opinion, the chancellor found that:
 

 The totality of the evidence ... leads the Court to find as fact and conclude that McCraw’s life from the time she and Buchanan were together, both before and after their marriage, has been marked with a rather tumultuous environment greatly lacking in stability, demonstration of determination, and in strength of character. The result has been exposure of Ashton to activities and circumstances not conducive to her best interest and welfare. Instances of inappropriate sexual behavior by McCraw in the presence of the child, engaging in drug use with Buchanan before their separation, cohabitation with one or more persons to whom she was not married, and all that at times when Ashton was in her care and was present, demonstrate a lack of thoughtful maturity and responsibility requisite to the proper care, training and upbringing of a child, and particularly up to the present age of Ashton.
 

 ¶ 17. Further, the chancellor noted that McCraw “effected at least partial abandonment of Ashton by voluntarily giving [Buchanan] one-half of the physical custody from the divorce, and later surrendered [an] even greater portion of physical custodial time to him, and ultimately when [Buchanan] became non-available because of his criminal behavior and conviction, McCraw agreed to surrender joint legal custody and substantial physical custody for Ashton to [Thornhill].... ”
 

 ¶ 18. The chancellor effectively found that McCraw was an unfit parent, while holding out hope that with some assistance, she might be rehabilitated. Based upon that belief of possible rehabilitation, the chancellor made a determination that it was in the best interest of Ashton that her primary custody be placed with her grandmother, but with McCraw continuing to have a role in Ashton’s life. The ultimate consideration in matters of child custody is the best interest of the child.
 
 See Alderson v. Alderson,
 
 810 So.2d 627, 629(¶ 5) (Miss.App.Ct.2002). The chancellor specifically noted and gave proper consideration to the guardian ad litem’s recommendation, and he stated why he felt the best interest of Ashton required that Thornhill have primary custody. Given the chancellor’s findings, we cannot say that he abused his discretion. This issue is without merit.
 

 II. Whether the chancellor erred in failing to award attorney’s fees and costs to McCraw and in assessing
 
 *985
 
 guardian ad litem’s fees equally against the parties without any consideration of McCraw’s financial abilities.
 

 A. Guardian ad litem Fees
 

 ¶ 19. McCraw argues that the appointment of a guardian ad litem was not mandatory, but it was done for the benefit of Ashton. Therefore, McCraw contends that the guardian ad litem fees should be paid from the monthly social security check that Ashton receives. Thornhill contends that Ashton’s guardianship should not have to pay because this action is in no way the fault of Ashton, nor is it in the best interest of Ashton to pay the fees.
 

 ¶20. “Our rules of procedure treat guardian ad litem fees as court costs to be awarded against the non-prevailing party.”
 
 Miss. Dep’t of Human Servs. v. Murr,
 
 797 So.2d 818, 821(¶ 9) (Miss.2000). Mississippi Rule of Civil Procedure 17(d) specifies that the fees of the guardian ad litem are to be considered as part of the costs of an action and states that:
 

 Whenever a guardian ad litem shall be necessary, the court in which the action is pending shall appoint an attorney to serve in that capacity. In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the costs in such action.
 

 ¶ 21. “Chancery courts have large discretion in apportioning costs. Nevertheless, the exercise of such discretion is not final, but is reviewable on appeal, and if it appear [sic] that the decree apportioning the costs works a manifest injustice on any of the parties, the decree will be reversed.”
 
 Ashburn v. Ashburn,
 
 970 So.2d 204, 217(¶34) (Miss.Ct.App.2007).
 

 ¶ 22. The chancellor in the case at bar found it advisable to appoint a guardian ad litem, Johnson, to represent Ashton’s best interest, to investigate allegations of abuse, and to report any findings of abuse to the trial court. The chancellor, within his discretion, could have assessed the total amount of costs and fees to McCraw, who is considered the non-prevailing party. However, the chancellor assessed the guardian ad litem’s fees equally against the parties. There is no evidence in the record to indicate that the apportionment of the cost for the guardian ad litem was an undue burden to either party. We find that the chancellor did not abuse his discretion in equally assessing the guardian ad litem fees to the parties.
 

 B. Attorney’s Fees
 

 ¶23. McCraw contends that the extensive attorney’s fees and costs are the result of a large number of unfounded claims by Thornhill that she was forced to defend. McCraw claims the chancellor did not consider that her financial means were limited when assessing costs and fees. McCraw asserts that she has two other small children to care for, is a low-wage earner, is less educated and less capable of paying reasonable attorney’s fees and costs than Thornhill, and the assessed fees would be an undue hardship on her and her family. Thornhill asserts that McCraw did not present her financial situation to the chancellor, nor did she put a financial declaration into the record.
 

 ¶ 24. “[Attorney fees are not normally awarded in child custody modification actions.”
 
 Mixon v. Sharp,
 
 853 So.2d 834, 841(¶ 32) (Miss.Ct.App.2003). “The chancery court is charged to give adequate consideration to the ‘financial abilities’ of the parties to pay any as
 
 *986
 
 sessed fees, and then how should the same be apportioned, if any.”
 
 In re the Adoption of K.M.J. and E.S.J. Minor Children,
 
 758 So.2d 402, 404(¶ 10) (Miss.2000). “Generally, attorney’s fees should only be awarded where the moving party has demonstrated an inability to pay. However, attorney’s fees may also be properly awarded where one party’s actions have caused the opposing party to incur additional legal fees.”
 
 Stuart v. Stuart,
 
 956 So.2d 295, 299(¶ 20) (Miss.Ct.App.2006) (citations omitted).
 

 ¶ 25. The chancellor could have considered McCraw’s financial ability in the assessment of costs and fees. However, McCraw failed to present any evidence that spoke to her inability to pay the fees and costs assessed. The record indicates that after Johnson filed an application for partial payment of guardian ad litem fees, the chancellor filed an order on three separate occasions directing the parties to make a partial payment of $400 toward the guardian ad litem’s fees. At no time during these proceedings did McCraw inform the court of any inability to pay. There is no showing of any abuse of discretion by the chancellor. Therefore, this assignment of error is without merit.
 

 ¶ 26. THE JUDGMENT OF THE MARION COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J, NOT PARTICIPATING.
 

 [1]
 

 . In McCraw's petition, she used the term “natural parent”; however, we note that Thornhill is not Ashton's natural parent, as she is the parental grandparent.