# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00793-COA

| | |
|---|---|
| **MONICA ASHBROOK DARBY AND ANDREW ROSS DARBY** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **HAROLD COMBS, KARRON COMBS AND CRYSTAL JOHANNA COMBS** | **APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/27/2015 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | TRACY BUSTER WALSH |
| ATTORNEYS FOR APPELLEES: | A.E. (RUSTY) HARLOW JR. |
| | CRYSTAL JOHANNA COMBS (PRO SE) |
| | KATHI CRESTMAN WILSON |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | AWARDED JOINT PHYSICAL AND LEGAL CUSTODY OF ADDIE DARBY TO MONICA DARBY AND HAROLD AND KARRON COMBS |
| DISPOSITION: | AFFIRMED - 10/25/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., CARLTON AND FAIR, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     Monica Darby, the paternal grandmother of Addie Darby, filed a petition seeking custody of Addie. Harold and Karron Combs (collectively, the Combses), the maternal great-grandparents of Addie, also filed a petition seeking custody of Addie. The chancellor awarded joint custody of Addie to both Monica and the Combses. Monica and her son, Andrew Darby (Drew), now appeal, arguing that: (1) the chancellor abused his discretion in

awarding joint physical custody of Addie; (2) the chancellor erred in failing to provide her with any holiday visitation; (3) the chancellor abused his discretion in assessing a portion of the guardian ad litem (GAL) fee to Monica; and (4) the chancellor's award of child support is too vague and ambiguous. Finding no error, we affirm the chancellor's judgment.

**FACTS**

¶2. Crystal Combs and Drew Darby are the biological parents of Addie, who was born February 11, 2013. On August 20, 2103, Monica, Drew's mother, filed a petition for custody of, or, in the alternative, visitation with Addie. In her petition, Monica alleged that Addie's parents, Drew and Crystal, neglected Addie and could not properly care for her. The chancellor appointed a GAL to investigate Monica's allegations of abuse. The GAL found that the allegations of neglect were substantiated, opining that Crystal neglected Addie and placed her in harm.

¶3. On February 24, 2014, Monica applied for a temporary restraining order (TRO) seeking immediate custody of Addie. After an emergency hearing on the matter, the chancellor entered an order finding that Crystal suffered from a "major drug and alcohol problem," leading to her arrest. As a result, the chancellor placed Addie in Monica's temporary custody. The chancellor then set the TRO for review on March 18, 2014.

¶4. The Combses, Addie's maternal great-grandparents, requested to intervene into the case, seeking to file their own petition requesting custody of Addie. The chancellor allowed the Combses to intervene, and they filed a petition seeking custody of Addie. On April 15, 2014, the chancellor entered an order awarding the Combses visitation with Addie,

2

stipulating that Addie could not be in Crystal's presence at any time.[1]

¶5.    At a trial on the matter held October 2, 2014, and continued until December 18, 2014, the chancellor heard testimony from Monica, the Combses, Crystal, Drew, and the GAL. The chancellor entered an opinion on January 23, 2015, and supplemented this opinion on February 2, 2015. In his order, the chancellor recognized that the natural parents, Crystal and Drew, were "admittedly unfit to have custody."[2] The chancellor then performed an *Albright*[3] analysis and considered the report of the GAL, and ultimately found that "the best interest of the minor child shall be served by awarding joint physical custody to both the paternal grandmother [(Monica)] and the maternal grandparents." The chancellor explained that although the GAL recommended that Monica receive custody of Addie, the chancellor possessed concern

> about the violence in the home of Monica as evidenced in the past when her husband and [Drew] . . . had a physical altercation resulting in injuries and charges. Furthermore, Drew has some mental health issues, that, which on his medication appear in control, however, only time will tell. This court believes that with the minor child residing with Monica while Drew is attending school in Arkansas, and at Harold and Karron's every other weekend and predominately during the summer is the safest route.

¶6.    The chancellor set forth that "Monica will have custody of Addie during the school times[,]" and "[d]uring holidays, alternating weekends, and summer months, Addie will be in the custody of Harold and Karron with strict instructions form this court to supervise any

---

[1] The chancellor eventually amended the order to provide Crystal with supervised visitation of Addie.

[2] *See* Miss. Code Ann. § 93-5-24 (Rev. 2013).

[3] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

3

and all visitation with . . . Crystal and Drew." The chancellor divided up Addie's holiday schedule, allowing Monica to have custody of Addie from 11 a.m. on Christmas Day until December 30 at 5 p.m.

¶7. The chancellor further stated that the GAL fee, set by the court, amounted to $3,000. The chancellor divided the fee equally between the Combses and Monica, with Monica to pay $1,500 and the Combses to pay $1,500.

¶8. Finally, the chancellor ordered that both Crystal and Drew "shall pay $100 per month by the 5th of each month as child support to whomever has custody of Addie."

¶9. Monica filed a motion to reconsider on February 26, 2015. As a result, the chancellor clarified his opinion with an amended judgment issued on April 27, 2015. In the amended judgment, the chancellor awarded joint physical and legal custody to both Monica and the Combses. The chancellor also clarified the holiday visitation schedule, dividing custody of Addie between Monica and the Combses.

¶10. Monica now appeals, arguing that: (1) the chancellor abused his discretion in awarding joint physical custody of Addie; (2) the chancellor erred in failing to provide her with any holiday visitation; (3) the chancellor abused his discretion in assessing a portion of the GAL fee to Monica; and (4) the chancellor's award of child support is too vague and ambiguous.

**STANDARD OF REVIEW**

¶11. When reviewing a chancellor's award of child custody, we will only reverse a chancellor's judgment where the chancellor is manifestly wrong or applied an erroneous legal

4

standard. *J.P. v. S.V.B.*, 987 So. 2d 975, 978-79 (¶7) (Miss. 2008). Furthermore, "[w]e will not reverse the chancellor's factual findings where there is substantial evidence in the record supporting [them]." *Id.* (internal quotation marks omitted); *Lucas v. Hendrix*, 92 So. 3d 699, 705 (¶15) (Miss. Ct. App. 2012). We recognize that "it is the responsibility of this Court, like the chancellor, to make the best interest of the child our polestar consideration." *Id.* (citing *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (Miss. 2002)).

¶12. On appeal, we review questions of law de novo. *Lucas*, 92 So. 3d at 705 (¶15).

**DISCUSSION**

**I. Joint Custody**

¶13. Monica first argues that the chancellor erred in awarding joint physical custody of Addie to her and the Combses. Monica asserts that joint custody is not an appropriate remedy between two nonparent third parties. She claims that Mississippi statutes authorize an award of joint custody between parents of a child, but relies upon Mississippi Code Annotated section 93-5-24 (Rev. 2013) for her assertion that the laws make no provision for such an award between nonparent third parties. Monica further argues that if this Court interprets the joint-custody agreement to provide de facto custody to Monica, then as Addie's great-grandparents, the Combses are not entitled to receive extensive visitation under the agreement.

¶14. The Combses assert that Monica failed to raise in her motion for reconsideration the issue that the chancellor lacked authority to grant joint custody, and the Combses argue that this issue was therefore waived. *Ainsworth v. Ainsworth*, 139 So. 3d 761, 765-66 (¶19)

5

(Miss. Ct. App. 2014). The Combses also argue that the chancellor properly awarded joint custody to both parties.[4]

¶15. "This Court will not reverse a chancellor's decision when supported by substantial evidence unless the chancellor either abused his discretion or based the decision on manifest factual or legal error." *McCarty v. McCarty*, 52 So. 3d 1221, 1224-25 (¶11) (Miss. Ct. App. 2011) (quoting *Lorenz v. Strait*, 987 So. 2d 427, 430 (¶12) (Miss. 2008)).

¶16. In *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss.1983), the Mississippi Supreme Court held:

> We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health[] and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school[,] and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent[;] and other factors relevant to the parent-child relationship.

¶17. Upon review of this appeal, we will first examine the record and the chancery court's findings and judgment. Here, the record reflects that the chancellor considered each of the *Albright* factors and summarized his findings in the February 4, 2015 supplemental opinion:

> Age, Health and Sex of Child — This factor favors neither party.

---

[4] *See also Schonewitz v. Pack*, 913 So. 2d 416, 420-21 (¶19) (Miss. Ct. App. 2005) (finding paternal grandparents had standing to request custody of child when they made their claim of abandonment or unfitness of mother).

Continuity of Care — This factor favors Monica as she has had full custody of Addie since February 24, 2014. This of course was the primary reason this [c]ourt elected to place the child with Monica during the school year.

Which has the best parenting skills — Both Monica and [the Combses] have had difficulty with parenting Drew and Crystal. Drew with mental health issues as well as drug issues, and Crystal with lying and drug issues. This [c]ourt, however, believes both are better for the trials and tribulations they have gone through, and this is why this [c]ourt finds this factor even or neutral.

Moral fitness — While the [c]ourt never condones allowing minor children to reside in the same house together, neither does it approve of buying birth control so your son can have sex with a young girl. This factor is neutral.

Stability of the home environment — This factor favors [the Combses] as Monica's marriage to her husband is questionable and its future stability not determined, and it appears [the Combses'] home and environment is stable. This factor favors the Combses.

Which has the willingness and capacity to provide primary child care — Both Monica and the Combses have the willingness and capacity to provide the child with primary care[;] therefore this factor is neutral.

Physical and mental health of the parties — The Combses are older and on more daily medication, and have some physical issues, and therefore this factor favors Monica. There again, this was why the [c]ourt saw Monica as more fit for the rigors of school, etc.

The employment — Since Monica's employment takes her from the home daily and the Combses have an adult at their home almost always, this factor favors the Combses.

Emotional ties — This factor is neutral as all parties love this minor child, and there is no evidence that the child doesn't love them.

Home and community record of the child — Not a factor at this time.

The chancellor thus found that the best interest of Addie would be placing her in the joint custody of Monica and the Combses.

¶18. In his April 27, 2015 amended judgment, the chancellor found as follows:

The [GAL] recommended that physical custody of [Addie] be placed with Monica . . .[,] with Harold and Karron Combs . . . being given visitation. The [GAL] found that the allegations of neglect against Crystal . . . were substantiated and that she had neglected Addie and placed her in harm. She further recommended supervised visitation for Crystal and . . . Drew.

The [c]ourt, based on the testimony of the parties, including [the] natural parents, that they should not be awarded custody, finds that the natural parents are unfit at this time . . . .

¶19. The chancellor then set forth the following custody award:

The [c]ourt, after considering the *Albright* factors and the [GAL] report[,] finds that the best interest of the minor child is served by awarding joint physical and legal custody to both Monica and [the Combses]. Monica will have custody of Addie during school times. [The Combses] shall have custody of Addie during holidays, alternating weekends and summer months.

. . . .

All visitation exercised by Drew shall be supervised by Monica or any other appropriate adult she approves of and all visitation exercised by Crystal shall be supervised by [the Combses] or any other appropriate adult they approve. The chancellor then clarified the "parenting schedule" as follows:

From the start of the school year in August, Monica shall have custody of Addie each and every week with [the Combses] having custody of Addie every other weekend from Friday at 5:00 p.m. until Monday at 8:00 a.m.

They shall further have every Thanksgiving holiday commencing Friday before Thanksgiving and extending to Friday at 5:00 p.m. the day after Thanksgiving when Monica shall resume custody.

Christmas [h]olidays shall be in the custody of [the Combses] the day DeSoto [C]ounty schools release until Christmas Day at 11:00 a.m. wherein Monica shall have custody of Addie from 11:00 a.m. until December 30 at 5:00 p.m. [The Combses] shall have Addie the remainder of the time unless it is an extended period of time until DeSoto [C]ounty schools start spring semester. If such is this case, Monica shall have weekend visitation from Friday at 5:00 p.m. until Saturday at 5:00 p.m.

Monica will have custody of Addie again when the spring semester starts, and

8

[the Combses] shall have custody every other weekend from Friday until Monday.

Spring Break holiday will be the same as Thanksgiving holiday.

During the summer, exactly one week after school is out, [the Combses] shall have custody of Addie each and every week until one week prior to school starting in the fall, at which time Addie will be returned to Monica's custody. Monica will have the same every other weekend visitation during the summer as [the Combses] had during the school year.

The parties are entitled to supervised visitation for one hour on Father's Day, Mother's Day, Addie's birthday, and Drew and Crystal's birthdays.

¶20.   In his February 2, 2015 supplemented opinion, the chancellor expressed his concern

about the violence in the home of Monica as evidenced in the past when her husband and her son, the child's natural father, had a physical altercation resulting in injuries and charges. Furthermore, Drew has some mental health issues . . . which on his medication appear in control, however, only time will tell. This [c]ourt believes that with [Addie] residing with Monica while Drew is attending school in Arkansas, and at [the Combses's house] every other weekend and predominately during the summer is the safest route.

¶21.   In turning to examine our state's statutory custody guidelines, we recognize that section 93-5-24(1)(e) provides as follows:

(1) Custody shall be awarded as follows according to the best interests of the child:

. . . .

(e) Upon a finding by the court that both of the parents of the child have abandoned or deserted such child or that both such parents are mentally, morally or otherwise unfit to rear and train the child the court may award physical and legal custody to:

(i) The person in whose home the child has been living in a wholesome and stable environment; or

(ii) Physical and legal custody to any other person

9

deemed by the court to be suitable and able to provide
adequate and proper care and guidance for the child.

Section 93-5-24(1)(e) recognizes that upon a finding that both parents are unfit, physical and legal custody shall be awarded, according to the best interests of the child, to either "[t]he person in whose home the child has been living in a wholesome and stable environment; or . . . to any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child." The chancellor here clearly awarded joint custody to be shared by Monica (the paternal grandmother) and the Combses (the maternal great-grandparents) after finding both natural parents unfit and after considering the best interests of Addie.

¶22. Section 93-5-24(9)(b) addresses custody decisions when a parent fails to overcome the presumption of domestic violence. *See* Miss. Code Ann. § 93-5-24(9).[5] Section

_____

[5] Mississippi Code Annotation section 93-5-24(9) provides:

(9)(a)(i) In every proceeding where the custody of a child is in dispute, there shall be a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody or joint physical custody of a parent who has a history of perpetrating family violence. The court may find a history of perpetrating family violence if the court finds, by a preponderance of the evidence, one (1) incident of family violence that has resulted in serious bodily injury to, or a pattern of family violence against, the party making the allegation or a family household member of either party. The court shall make written findings to document how and why the presumption was or was not triggered.

(ii) This presumption may only be rebutted by a preponderance of the evidence.

. . . .

(b)(i) If custody is awarded to a suitable third person, it shall not be until

10

93-5-24(9)(b)(i) provides that "[i]f custody is awarded to a suitable third person, it shall not be until the natural grandparents of the child have been excluded." In the instant case, the natural paternal grandmother, Monica, was considered by the chancellor and was awarded joint custody along with the maternal great-grandparents, the Combses. Therefore, the record reflects that the chancellor's decision also complied with section 93-5-24(9)(b).

¶23. Monica argues, however, that the chancellor lacked authority to award joint custody of Addie to both her and to the Combses because section 93-5-24(3)[6] provides that "joint custody may be awarded, in the discretion of the court, upon application of one or both parents." However, this section does not apply in the instant case since neither of the natural parents is seeking custody of Addie, and since the chancellor recognized in his order that Crystal and Drew were "admittedly unfit to have custody" of Addie. As stated, the chancellor found that Drew and Crystal had neglected Addie and placed her in harm or at risk of harm. At the custody hearing, when asked if she felt that she was in a position to have custody of Addie, Crystal responded that her "life is too unstable to be a good home for Addie. . . . I can't provide what I feel she needs." The record also shows that the chancellor found Crystal suffered from a major drug and alcohol problem. Drew also acknowledged at the hearing that he was not in a position to have custody of Addie.

---

the natural grandparents of the child have been excluded and such person shall not allow access to a violent parent except as ordered by the court.

[6] *See generally* Miss. Code Ann. § 93-5-24(2) ("Joint custody may be awarded where irreconcilable differences is the ground for divorce, in the discretion of the court, upon application of both parents."). The record reflects that Drew and Crystal were never married.

¶24. In addition to the authority established in subsections 93-5-24(1) and 93-5-24(9)(b)(i), Mississippi Code Annotated section 93-13-1 (Rev. 2013) recognizes the chancellor's authority to award custody of a minor child to a "suitable" third party when a parent is "unsuitable to discharge the duties of guardianship" for a minor child.[7] In the case at bar, the paternal grandmother, Monica, seeks a paramount right to custody over other blood relatives, the maternal great-grandparents. In this case, where the parents have failed to rebut evidence of violence, section 93-5-24(9)(b)(i) gives Monica the right to be considered as a guardian before an award of custody to any other suitable third parties, but the statute does not give her an exclusive right over other relatives or over the best interests of the child. We also acknowledge that the chancellor issued his award of joint custody after finding the natural parents admittedly unfit. However, the record also reflects evidence that violence between Drew and his father, resulting in an injury to his father, occurred in Monica's home. Drew also has a history of self-inflicting wounds. Thus, the record shows evidence that Monica's home was not wholesome or stable as required by section 93-5-24(1)(e)(i). In following precedent, the record reflects that the chancellor herein considered the best interests of Addie, and in so doing, applied the *Albright* factors. After performing this analysis, the chancellor awarded joint custody of Addie to both Monica and the Combses. We now turn to examine applicable jurisprudence.

¶25. In *Lucas*, 92 So. 3d at 705-06 (¶¶17-18), this Court established that neither section 93-5-24 nor the majority of prior caselaw "require[s] an *Albright* analysis if the chancellor

_____

[7] *See also* N. Shelton Hand, *Mississippi Divorce, Alimony, and Child Custody* § 14-24 (6th ed. 2012).

finds the sole, natural parent has abandoned or deserted the child or is unfit to raise the child." Additionally, in *Hamilton v. Houston*, 100 So. 3d 1005, 1011 (¶22) (Miss. Ct. App. 2012), this Court affirmed the chancellor's award of custody to the child's grandparents where the chancellor found that both natural parents had deserted the child. The *Hamilton* court cited to *Lucas*, 92 So. 3d at 705-06 (¶¶17-18), and section 93-5-24(1)(e)(i) in determining that "the chancellor [possessed] statutory authority to award the [grandparents] custody based on their role as [the child's] primary caretakers."

¶26. In *Worley v. Jackson*, 595 So. 2d 853, 856 (Miss. 1992), the supreme court affirmed the chancellor's finding that "the best interest of the children would be served by placing them in the custody of the [paternal grandparents] with the [maternal grandparents] having very liberal visitation rights." In that case, the natural mother was incarcerated for murdering the children's father. *Id*. at 854. The *Worley* court found no abuse of discretion in the chancellor's application of the *Albright* factors to the determination of an award of custody as between the maternal grandparents and the paternal grandparents. *Id*. at 856. The supreme court further found no abuse of discretion in the chancellor's determination that the children's best interests "would be served by placing them in the custody of the [paternal grandparents,] with the [maternal grandparents] having very liberal visitation rights." *Id*. The supreme court in *Worley* also determined that substantial evidence supported the chancellor's findings and his analysis of the *Albright* factors. *Id*. The *Worley* court acknowledged that the *Albright* factors "were extended to apply to all original custody determinations involving minor children[.]" *Id*. (citing *Carr v. Carr*, 480 So. 2d 1120, 1123

13

(Miss. 1985)).

¶27.    In a custody contest between third parties, where neither party has a superior right to custody of the child, the child's best interests and welfare are the polestar consideration.[8] Here, the chancellor determined, after considering the *Albright* factors and GAL's report, "that the best interest of the minor child is served by awarding joint physical and legal custody to both Monica and [the Combses]." Like the court in *Worley*, upon review, we cannot say that the chancellor was manifestly wrong in the award of joint custody. *Worley*, 595 So. 2d at 856. The record reflects that the chancellor carefully reviewed the *Albright* factors in determining the best interests of Addie, and the chancellor's decision is supported by substantial evidence. *Id*.[9]

¶28.    After our review of the record, we find that the chancellor's award of joint custody to both Monica and the Combses is supported by substantial evidence. *McCarty*, 52 So. 3d at 1224-25 (¶11). We thus find no abuse of discretion in the chancellor's award of custody. *Id*. This issue is without merit.

## II.    Holiday Visitation

¶29.    Monica next argues that in his amended judgment, the chancellor failed to provide her with any holiday visitation with Addie. Monica asserts that the fact that the chancellor provided the Combses with periods of visitation equal to or greater than those of an actual parent required the chancellor to provide his findings in support of such an award, and his

---

[8] *Davis v. Holland*, 239 Miss. 514, 517, 123 So. 2d 850, 851 (1960) (best interest of child constitutes a factual issue within the chancellor's discretion to determine).

[9] *See also State ex rel. P.T.*, 159 So. 3d 1184, 1191 (La. Ct. App. 2015).

failure to do so is manifest error. Monica cites to *Mixon v Mixon*, 724 So. 2d 956, 961 (¶15) (Miss. Ct. App 1998), for her argument that while Addie is in the Combses' custody, Monica becomes like a noncustodial parent and, as such, is "reasonably entitled to more than limited and short periods of visitation." Monica asserts that reasonable holiday visitation has been recognized as being part of "standard" visitation, and therefore a lack of holiday visitation is seen as a restriction. Finally, Monica claims that because there is no evidence that standard holiday visitation with Monica would likely cause actual harm to Addie, the chancellor's imposition of limitations upon Monica's holiday visitation is both an abuse of discretion and manifest error and should be reversed.

¶30. We recognize that "[v]isitation is a matter within the chancellor's sound discretion." *Tidmore v. Tidmore*, 114 So. 3d 753, 763 (¶35) (Miss. Ct. App. 2013). "The chancellor is charged with fashioning a visitation schedule that is in the best interests of the children, and the chancellor's visitation decision is afforded great deference by this Court." *Id*.

¶31. In examining the chancellor's April 27, 2015 amended judgment, we find that the chancellor provided the parties with holiday visitation as follows:

> [The Combses] shall . . . have every Thanksgiving holiday commencing Friday before Thanksgiving and extending to Friday at 5:00 p.m. the day after Thanksgiving when Monica shall resume custody.

> Christmas [h]olidays shall be in the custody of [the Combses] the day DeSoto [C]ounty schools release until Christmas Day at 11:00 a.m. wherein Monica shall have custody of Addie from 11:00 a.m. until December 30 at 5:00 p.m. [The Combses] shall have Addie the remainder of the time unless it is an extended period of time until DeSoto [C]ounty schools start spring semester. If such is this case, Monica shall have weekend visitation from Friday at 5:00 p.m. until Saturday at 5:00 p.m.

Monica will have custody of Addie again when the spring semester starts, and [the Combses] shall have custody every other weekend from Friday until Monday.

Spring Break holiday will be the same as Thanksgiving holiday.

During the summer, exactly one week after school is out, [the Combses] shall have custody of Addie each and every week until one week prior to school starting in the fall, at which time Addie will be returned to Monica's custody. Monica will have the same every other weekend visitation during the summer as [the Combses] had during the school year.

The parties are entitled to supervised visitation for one hour on Father's Day, Mother's Day, Addie's birthday, and Drew['s] and Crystal's birthdays.

¶32.    As stated, "[t]he chancellor is granted broad discretion in visitation determinations and this Court will not reverse a chancellor's findings of fact so long as they are supported by substantial evidence in the record." *Wilburn v. Wilburn*, 991 So. 2d 1185, 1194 (¶20) (Miss. 2008) (internal quotation marks omitted). In determining the custody schedule herein, the chancellor expressed his concern about the potential for violence in Monica's home based upon a physical altercation between Drew and his father that resulted in Drew's father being hospitalized due to his injuries. The record also shows that Drew has a history of self-inflicting wounds. As a result, the chancellor felt that Addie "residing with Monica while Drew is attending school in Arkansas, and at [the Combses' house] every other weekend and predominately during the summer is the safest route."

¶33.    The record before us reflects no abuse of discretion by the chancellor in his award of holiday visitation to Monica. As a result, this issue lacks merit.

### III.    GAL Fee

¶34.    Monica next asserts as error the chancellor's judgment assessing half of the GAL fee

16

to Monica and the other half to the Combses. Monica admits that the GAL substantiated Monica's allegations of neglect set forth in her petition seeking custody, but Monica maintains that it is a manifest injustice to assess against her, the prevailing party, any portion of the fee from a GAL she did not request.

¶35. We recognize that "[o]ur rules of procedure treat guardian ad litem fees as court costs to be awarded against the non-prevailing party." *McCraw v. Buchanan*, 10 So. 3d 979, 985 (¶20) (Miss. Ct. App. 2009) (quoting *Miss. Dep't of Human Servs. v. Murr*, 797 So. 2d 818, 821 (¶9) (Miss. 2000). Mississippi Rule of Civil Procedure 17(d) provides: "In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the cost in such action." This Court has held that chancellors possess large discretion in apportioning costs. *McCraw*, 10 So. 3d at 985 (¶21). If upon review this Court finds that "the decree apportioning the costs works a manifest injustice on any of the parties, the decree will be reversed." *Id*.

¶36. In *McCraw*, 10 So. 3d at 985 (¶22), the chancellor appointed a GAL to represent the child's "best interest, to investigate allegations of abuse, and to report any findings of abuse to the trial court." The chancellor assessed the GAL fees equally against both parties. *Id*. Upon review, this Court found "no evidence in the record to indicate that the apportionment of the cost for the guardian ad litem was an undue burden to either party." *Id*. As a result, this Court held that the chancellor "did not abuse his discretion in equally assessing the guardian ad litem fees to the parties." *Id*.

17

¶37. In the present case, the chancellor's January 20, 2015 opinion reflects the following assessment with regard to the GAL fee: "The GAL fee is set by the [c]ourt to be $3,000 with $1,500 to be paid by Monica, and $1,500 to be paid by [the Combses]." In her brief, Monica asserts that the apportionment of the GAL costs "work[s] a manifest injustice upon her"; however, she provides no evidence to support this allegation. *Id*. We thus find no error in the chancellor's equal assessment of the GAL fee to Monica and the Combses.

### IV. Child-Support Award

¶38. Monica argues that the chancellor erred in entering a vague and ambiguous award of child support. Monica asserts that when read in light of the "parenting schedule" defined by the chancellor in paragraph 8 of the amended judgment, the language is unclear as to who would have "primary custody" of Addie for certain months. The Combses, however, maintain that the parties can easily determine the number of days Addie is with each party, and Drew and Crystal can pay the child support to whichever party has Addie the majority of the month.

¶39. In his amended judgment, the chancellor directed both Crystal and Drew to "pay $100.00 each per month by the 5th of each month as child support to whomever has the primary custody of Addie for that month." As previously provided in this opinion, the chancellor set forth a detailed custody schedule in his amended judgment.

¶40. We recognize that "[w]hen questions arise concerning the meaning of a judgment decree or opinion of court, answers are sought by the same rules of construction which appertain to other legal documents." *Rogers v. Rogers*, 919 So. 2d 184, 188 (¶14) (Miss. Ct.

18

App. 2005) (internal quotation marks omitted).[10] "Where ambiguities may be found, the agreement should be construed much as is done in the case of a contract, with the court seeking to gather the intent of the parties and render its clauses harmonious in the light of that intent." *Id.* Contract interpretation constitutes a question of law, and thus we review such issues de novo. *Daley v. Carlton*, 19 So. 3d 781, 783 (¶6) (Miss. Ct. App. 2009).

¶41. We have held that when a contract is clear and unambiguous, we will not concern ourselves "with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended." *Beezley v. Beezley*, 917 So. 2d 803, 807 (¶14) (Miss. Ct. App. 2005); *see also Ivison v. Ivison*, 762 So. 2d 329, 335 (¶6) (Miss. 2000) ("[T]he parties are bound by the language of the contract where a contract is unambiguous."). However, if the language is unclear, the court will "harmonize the provisions in accord with the parties' intent." *West v. West*, 891 So. 2d 203, 210-11 (¶14) (Miss. 2004). If the parties' intent is still unclear, the canons of construction may be utilized to understand the intent. *Id.* Finally, parol or extrinsic evidence may be considered if necessary. *Id.*

¶42. Upon our review of the chancellor's custody schedule, we find that the parties herein can clearly determine who has primary custody of Addie each month for child-support purposes. Accordingly, we find the chancellor's award of child support to be clear and unambiguous. This issue lacks merit.

---

[10] *See also Gaiennie v. McMillin*, 138 So. 3d 131, 135 (¶8) (Miss. 2014) ("While a chancellor's decisions in a domestic action are reviewed for manifest error, a property settlement agreement is a contract, and contract interpretation is a question of law, which is reviewed de novo.").

¶43. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**